JACKSON LEWIS LLP
TERESA BURKE WRIGHT
PAUL J. SIEGEL (ADMITTED *PRO HAC VICE*)
WENDY J. MELLK (ADMITTED *PRO HAC VICE*)
8614 Westwood Center Drive
Suite 950
Vienna, VA 22182
Telephone 703 821-2189
Facsimile 703 821-2267

Attorneys for Defendants
PARSONS BRINCKERHOFF INC. and ALLTECH, INC.

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | | |
|---|---|---|
| RONALD HOUSTON, on behalf of himself and all others similarly situated; and JOSEPH LOMASCOLO, on behalf of himself and all others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) | |
| URS CORPORATION, DEWBERRY & DAVIS LLC, PARTNERSHIP FOR RESPONSE AND RECOVERY (PaRR), PARSONS BRINCKERHOFF, INC., and, ALLTECH, INC. | ) ) ) ) ) ) | Case No. 08 CV 203 (LO)(JFA) |
| Defendants. | ) ) | |

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION OF THIS CLASS AS A "COLLECTIVE ACTION" UNDER THE FAIR LABOR STANDARDS ACT, 29 U.S.C. 216(b)**

## TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES .................................................................................................iii

PRELIMINARY STATEMENT ............................................................................................1

FACTUAL BACKGROUND..................................................................................................4

     A.     Background Regarding The ALLTECH Defendants.............................................4

     B.     The PaRR Defendants And The ALLTECH Defendants Are Completely Different And Unrelated Entities .......................................................5

     C.     Background Regarding Services Performed By Inspectors Who Elect To Render Services.........................................................................................6

           1.     Inspectors Are Free To Accept Or Reject Offers Of Inspections Without Penalty. ....................................................6

           2.     ALLTECH And Inspectors Enter Into Independent Contractor Agreement, Memorializing The Nature Of The Inspectors' Services .........................................................................7

           3.     Inspectors Are Responsible For Their Own Expenses And Use Their Own Equipment ......................................................8

           4.     Inspectors Interaction With ALLTECH Employees Varies Based On The Size And Nature Of The Disaster ....................................8

           5.     Since Inspectors Are Compensated On A "Per Inspection" Basis, Their Profitability Varies Based Upon the Disaster, Business Related Costs And The Pace And In The Manner In Which They Choose To Conduct Inspections .....................................9

           6.     Plaintiff Lomascolo's Admissions Regarding His Own Independent Contractor Status Rebut Any Claim That A Class Should Be Certified.........................................................................10

ARGUMENT         BECAUSE PLAINTIFFS CANNOT ESTABLISH THAT THEY ARE SIMILARLY SITUATED TO PUTATIVE CLASS MEMBERS, CONDITIONAL CERTIFICATION AS A "COLLECTIVE ACTION" SHOULD BE DENIED ....................11

     A.     General Legal Principles Governing FLSA Collective Actions ...........................11

           1.     The Standard Applicable To Determining Whether Individuals Are "Similarly Situated".........................................................12

i

**Page(s)**

B.  There Is No Evidence That The ALLTECH Inspectors Are Similarly Situated To The PaRR Inspectors ........................................................16

C.  The Determination Of Whether An Individual Is Properly Classified As An Independent Contractor For FLSA Purposes Requires An Individualized Inquiry....................................................................17

1.  The Affidavits Submitted By Plaintiffs Are Insufficient To Satisfy Their Burden To Demonstrate That They Are Similarly Situated To Other ALLTECH Independent Contractors ....................................................................................18

(a)  The Inspectors Are Not Similarly Situated To Each Other Because Of The Different Ways In Which They Choose To Render Services (If At All) ...............................20

(b)  Plaintiffs Are Not Similarly Situated Because An Individualized Analysis Is Required To Determine How Many Hours, If Any, Each Inspector Allegedly Worked ..........................................................20

(c)  Neither Internal Revenue Service Determinations Nor Pennsylvania Department Of Labor Determinations Are Binding On This Court. To The Contrary, Individualized Inquiries Are Required To Determine The Proper Classification Of Each Inspector As A Contractor ..............................................21

(d)  The Potential Collective Action Members Are Not Similarly Situated Because An Individualized Analysis Is Required To Determine Whether Each Inspector Is Subject To The Motor Carrier Exemption For All Or Part Of The Period Covered By The Lawsuit..........................................................24

i.  The Motor Carrier Exemption ...........................................24

ii.  The Applicability Of The Motor Carrier Exemption To ALLTECH's FEMA Inspectors ....................................................25

D.  The ALLTECH Defendants Have Demonstrated A Likelihood Of Success On The Merits And Thus Notice Should Not Issue ................................26

CONCLUSION....................................................................................27

## TABLE OF AUTHORITIES

Page

### FEDERAL CASES

Aguirre v. SBC Communications, Inc., 2006 U.S. Dist. LEXIS 22211 (S.D. Tex.
    Apr. 11, 2006) ...................................................................................................14

Amendola v. Bristol-Myers Squibb Co., 2008 U.S. Dist. LEXIS 43681 (S.D.N.Y.
    June 4, 2008) citing In re Initial Pub. Offering Sec. Litig. ("In re IPO"), 471
    F.3d 24 (2d Cir. 2006)........................................................................................12

Bernard v. Household Intern, Inc., 231 F. Supp. 2d 433 (E.D. Va. 2002) ..............11,12,14

Braunstein v. Eastern Photographic Laboratories, Inc., 600 F.2d 335 (2d Cir.
    1978) ..................................................................................................................11

Chao v. Mid-Atlantic Installation Servs., 2001 U.S. App. LEXIS 14804 (4th Cir.
    2001) ..................................................................................................................18

Davis v. Hartland Homes, 2006 U.S. Dist. LEXIS 70599 (D. Neb. September 28,
    2006) ..................................................................................................................23

De Jesus De Luna Guerrerro v. N.C. Grower's Ass'n, 338 F. Supp. 2d 649
    (E.D.N.C. 2004) .................................................................................................13

Diaz v. Elect. Boutique of Am., Inc., 2005 U.S. Dist. LEXIS 30382 (W.D.N.Y.
    Oct. 17, 2005) ....................................................................................................13

Dreyer v. Altchem Envt. Servs., Inc., 2006 U.S. Dist. LEXIS 93846 (D.N.J.
    December 12, 2006)............................................................................................14

Frankel v. Bally, Inc., 987 F.2d 86 (2d Cir. 1993)............................................................23

Freeman v. Wal-Mart Stores, Inc., 256 F. Supp. 2d 941 (W.D. Ark. 2003)................13,15

Friedrich v. U.S. Computer Services, 974 F.2d 409 (3d Cir. 1992) ............................25,26

Grace v. Family Dollar Stores, Inc., 2007 U.S. Dist. LEXIS 66096 (W.D.N.C.
    Sept. 6, 2007) ...............................................................................................13,14,17

Hanley v. Hand N'Heart, L.L.C., et al., 2007 U.S. Dist. LEXIS 64661 (E.D. Va.
    2007) ..................................................................................................................12

Harris v. FFE Transp. Servs., Inc., 2006 U.S. Dist. LEXIS 51437 (N.D. Tex. May
    15, 2006) ............................................................................................................14

Harrison v. McDonald's Corp., 411 F. Supp. 2d 862 (S.D. Ohio 2005)...........................15

Hoffman v. Sbarro, Inc., , 982 F. Supp. 249 (S.D.N.Y. 1997) ..........................................11

Hoffmann-La Roche, Inc. v. Sperling, 493 U.S. 165 (1989).........................................11,26

Horne v. U.S. Auto. Assoc., 279 F. Supp. 2d 1231 (M.D. Ala. 2003) ...............................15

King v. Asset Appraisal Servs., 470 F. Supp. 2d 1025 (D. Neb. 2006)........................25,26

Klitzke v. Steiner Corp., 110 F.3d 1465 (9th Cir. 1997) ...................................................24

Landsberg v. Acton Enter., Inc., 2006 U.S. Dist. LEXIS 23439 (S.D. Ohio Mar.
     22, 2006) ....................................................................................................................14

Levinson, et al v. Primedia, Inc., 2003 U.S. Dist. LEXIS 20010 (S.D.N.Y. 2003)...........15

Madrid v. Minolta Bus. Solutions, 2002 U.S. Dist. LEXIS 18539 (S.D.N.Y. Oct.
     1, 2002) ......................................................................................................................12

Marsh v. Butler Co. Sch. Sys., 242 F. Supp. 2d 1086 (M.D. Ala. 2003)...........................15

Martin v. Airborne Express, 16 F. Supp. 2d 623 (E.D.N.C. 1996)....................................25

McGuiggan v. CPC Int'l, 84 F. Supp. 2d 470 (S.D.N.Y. 2000).........................................23

Morrison v. Int'l Programs Consortium, 253 F.3d 5 (D.C. Cir. 2001)...............................23

Musarra v. Digital Dish, Inc., 454 F. Supp. 2d 692 (S.D. Ohio 2006) ..............................25

Persin v. Career Builders, LLC, 2005 U.S. Dist. LEXIS 23095 (N.D. Ill. Sept. 21,
     2005) ..........................................................................................................................15

Pfaahler v. Consultants for Architects, Inc., 2000 U.S. Dist. LEXIS 1772 (N.D.
     Ill., February 11, 2000) ..............................................................................................17

Reich v. Homier Distrib. Co., 362 F. Supp. 2d 1009 (N.D. Ind. Mar. 22, 2005) ..............26

Rodgers v. CVS Pharmacy, 2006 U.S. Dist. LEXIS 23272 (M.D. Fla. Mar. 22,
     2006) ..........................................................................................................................14

Schultz v. Capital Intern. Sec. Inc., 466 F.3d 298 (4th Cir. 2006) ...................................18

Sheffield v. Orius Corp., 2002 U.S. Dist. LEXIS 23781 (D. Or. Sept. 13, 2002).............15

Thomas v. City of Hudson, 1996 U.S. Dist. LEXIS 7244 (N.D.N.Y. May 20,
     1996) ..........................................................................................................................23

Thomas v. Wichita Coca-Cola Bottling Co., 968 F.2d 1022 (10th Cir. 1992).................25

Turk v. Buffets Inc., 940 F. Supp. 1255 (N.D. Ill. 1996) ..................................................24

Tyler v. Payless Shoe Source, Inc., 2005 U.S. Dist. LEXIS 31682 (M.D. Ala.
     Nov. 22, 2005) ............................................................................................................15

United States v. Silk, 331 U.S. 704 (1947) ........................................................................18

Westfall v. Kendle Int'l, et al., 2007 U.S. Dist. LEXIS 11304 ..........................................18

White v. Osmose, Inc., 204 F. Supp. 2d 1309 (M.D. Ala. 2002) ......................................16

Williams v. Alex's Transp., 969 F. Supp. 1142 (N.D. Ill. 1997) ......................................26

Wombles v. Title Max of Alabama, Inc., 2005 U.S. Dist. LEXIS 34733 (M.D.
        Ala. Dec. 7, 2005) ...........................................................................................14

## STATE CASES

Rue v. K-Mart Corp., 552 Pa. 13, 713 A.2d 82 (1998) ......................................................21

## DOCKETED CASES

Cowen v. Unemployment Compensation Board of Review, Docket No. 1946,
        Central District 2006, filed July 30, 2007 ....................................................22

## FEDERAL STATUTES

29 C.F.R. § 782.1(a) ..........................................................................................................24

49 U.S.C. § 13102 ..............................................................................................................24

29 U.S.C. § 213(b) .......................................................................................................23,24

Fed. R. Civ. P. 41(a) ............................................................................................................1

29 U.S.C. § 216(b) .......................................................................................................11,12

Motor Carrier Act, 49 U.S.C. § 31502 ("MCA") .........................................................24,25

As counsel for Defendants "PARSONS BRINCKERHOFF, INC. and ALLTECH, INC.", we submit this memorandum of law in opposition to Plaintiffs' "Motion for Conditional Certification Of This Case As A 'Collective Action' Under The Fair Labor Standards Act, 29 U.S.C. 216(b)".   The Court should deny Plaintiff's Motion and should not treat this lawsuit as a collective action.

## PRELIMINARY STATEMENT

This case is comprised improperly of two separate lawsuits asserting allegations against wholly unrelated companies.   Defendant ALLTECH, Inc. ("ALLTECH", together with parent corporation Parsons Brinckerhoff Inc. ("PBI") referred to herein as the "ALLTECH Defendants")[1] has a contract with the Federal Emergency Management Agency ("FEMA") to provide housing inspection services at Presidentially declared disaster sites.   Defendant Partnership for Response & Recovery ("PaRR", together with related entities URS Corporation and Dewberry & Davis LLC, the "PaRR Defendants")[2] has a similar, competitively bid FEMA contract.   During the FLSA limitation period, Plaintiff Joseph Lomascolo ("Lomascolo") was an independent contractor who, at times, elected to perform housing inspections for ALLTECH.   In contrast, and upon information and belief, Plaintiff Ronald E. Houston ("Houston") was an independent contractor who elected to perform housing inspections when offered the opportunity

---

[1] ALLTECH and PBI are referred to collectively for ease of reference only.  It is the ALLTECH Defendants' position that parent corporation PBI is an improper party to this action.  As counsel for Plaintiffs has declined to stipulate to dismissal of PBI, the ALLTECH Defendants intend to seek PBI's dismissal via motion.

[2] PaRR is a partnership organized under the Virginia Uniform Partnership Act by the Defendant Dewberry & Davis LLC and URS Group, Inc. ("URS Group," a non-party to this action).  Plaintiffs originally alleged that URS Corporation ("URS Corp."), the corporate parent of URS Group, is a partner in PaRR.  (Comp. ¶ 11.) Acknowledging the inaccuracy of that allegation, Plaintiffs have stipulated to the dismissal of URS Corp.  On May 1, 2008, this Court ordered the dismissal of Defendant URS Corp. pursuant to Fed. R. Civ. P. 41(a).  Plaintiffs have not elected to name URS Group as a party to this action.

by PaRR.  Each Plaintiff claims the independent contractor classification was improper and seeks, pursuant to the Fair Labor Standards Act ("FLSA"), overtime wages for hours worked in excess of forty (40) hours per week.  They are wrong and their effort to expand their suit should be rejected.

Neither Plaintiff has alleged a claim against co-Defendants for whom he did not perform services.  For example, Houston has not alleged any wrongdoing by the ALLTECH Defendants.  Similarly, Lomascolo has not asserted any claims against the PaRR Defendants.  Thus, this case should be divided into two separate lawsuits.  Despite that clear division, Plaintiffs wrongly have asked this Court to conclude that they are "similarly situated" within the meaning of the FLSA as to all persons who performed inspection services for either Defendant and conditionally to certify a collective action consisting of all residential housing inspectors.  As set forth herein, certification of any collective action would be inappropriate, and improperly would subject this Court to a great number of mini-trials to analyze each factor related to the proper classification of putative class members (and the determination of who is their putative "employer").

At this preliminary stage, the evidence submitted by the ALLTECH Defendants establishes that the individuals who elected to perform inspection services at FEMA sites through ALLTECH are not similarly situated to Lomascolo (and the four affiants who claim to be similarly situated to Lomascolo).  In fact, the Declarations submitted herewith support only one conclusion – that the relationships between ALLTECH and its independent contractor inspectors varied greatly by, inter alia, disaster site, geographic location, project size, and inspector.  Each inspector conducts his or her own inspection business in a unique fashion, many of which differ irreconcilably from the practices described by Plaintiffs.  As such, any

determination regarding an ALLTECH inspector's proper classification under the FLSA, application of the motor carrier exemption, and the number of hours worked in any week, would require a fact-intensive individualized inquiry into the services performed, the location where services were performed, the number of sub-contractors hired by the inspector, the disaster at issue, and so on and so forth.

Because the two named Plaintiffs are not similarly situated to one another, and because a determination of each inspector's proper classification under the FLSA would require a fact-intensive, individualized determination, this case is not appropriate for collective action treatment.  As such, the Court should deny Plaintiffs' Motion.

## FACTUAL BACKGROUND

### A.    Background Regarding The ALLTECH Defendants[3]

Defendant ALLTECH is a corporation organized under the laws of the State of

Delaware, with headquarters in Virginia.  Ex. A (Affidavit of Hugh Inglis, dated June 5, 2008

("Inglis Aff.") ¶ 2.  ALLTECH is a wholly owned subsidiary of Defendant PBI.  Ex. B (Inglis

Aff., dated January 3, 2008, at ¶ 3).  Pursuant to a contract with FEMA, ALLTECH retains

independent contractors to inspect residences damaged in "disasters" as declared by the President

and managed by the Federal Emergency Management Agency (FEMA).  Ex. A (Inglis Aff. at ¶

5).  This program is part of FEMA's disaster-related housing inspection program, which provides

federal housing assistance to homeowners and renters whose residences have been affected by a

disaster declared by the President.  Id.

ALLTECH maintains a database of independent contractors who have expressed

interest in being offered to conduct on-site physical inspections of residences damaged by a

disaster anywhere in the United States.  Ex. A (Inglis Aff. ¶ 6).  These inspectors are offered

engagements on an "as needed" basis.   When ALLTECH is awarded a Task Order by FEMA

with regard to a particular disaster, ALLTECH uses its data base to identify potential inspectors.

Id.  There is no ongoing inspector-ALLTECH relationship.  ALLTECH offers assignments to

these independent contractors only upon receipt of a "Task Order" from FEMA.  Id. at ¶ 11.

Independent contractors who elect an assignment have no relationship with ALLTECH's parent

corporation, PBI.  Id. at ¶¶ 31-32; Ex. C (Declaration of Larry Baker ("Baker Decl.") at ¶ 5); Ex.

D (Declaration of Brad Middleton ("Middleton Decl.") at ¶ 8).  Except for inspections performed

under the Independent Contractor Agreement and pursuant to a Task Order, the inspectors

---

[3] All exhibits ("Ex. __") are attached to the Affirmation of Paul J. Siegel, Esq. ("Siegel Aff.") unless otherwise
indicated.

perform no inspections and have no relationship with ALLTECH.  Ex. A (Inglis Aff. ¶ 26).  As set forth in the accompanying Affidavits, inspectors routinely hold employment or operate their own businesses in construction, carpentry, oil, home inspection, and personal training or other service industry.

       **B.**       <u>**The PaRR Defendants And The ALLTECH Defendants Are Completely Different And Unrelated Entities**</u>

       ALLTECH and PaRR compete with each other for contracts with FEMA to provide residential housing inspections of homes damaged or destroyed at disaster sites.  <u>Id</u>. ¶ 7.  They are independent entities that do not share common ownership, benefits, facilities or financial resources.  Ex. B (Inglis Aff. ¶ 4.)  Plaintiffs already have conceded these facts.  Plaintiff's Complaint ¶¶ 9-13; Ex. E (Plaintiff's Opposition to Defendants' Motion to Dismiss For Improper Venue Or, In the Alternative, To Transfer Venue ("Plaintiffs' Opp.")).

       PaRR has no involvement with ALLTECH's negotiation of its contract with FEMA; ALLTECH's decisions regarding classification of inspectors; policies regarding inspectors; or ALLTECH's compensation of inspectors.  Similarly, ALLTECH is not involved with PaRR's negotiation of its contract with FEMA, and has no knowledge of the particulars of PaRR's relationship with FEMA.

       During the period covered by their suit, Plaintiff Joseph Lomascolo rendered services as an independent contractor on assignments made available by ALLTECH.  He makes no claim against the PaRR Defendants.  Conversely, Plaintiff Ronald Houston rendered services upon assignments made available by Defendant PaRR, <u>not</u> ALLTECH.  The Complaint (and the briefs and affidavits submitted by Plaintiffs in opposition to the Defendants' Motion to Dismiss Or Transfer Venue From the Central District of California to the instant venue), establish

unequivocally that Plaintiff Houston has no putative claim against the ALLTECH Defendants and Plaintiff Lomascolo has no putative cause of action against the PaRR Defendants.

**C.**     **Background Regarding Services Performed By Inspectors Who Elect To Render Services**

**1.**     **Inspectors Are Free To Accept Or Reject Offers Of Inspections Without Penalty**

After a "disaster" is declared by the President, FEMA manages disaster site activities.  ALLTECH's Field Operations Managers participate in a conference call with FEMA representatives, during which ALLTECH is advised about the "disaster" at issue.  For example, FEMA will advise ALLTECH as to the number of counties affected, and disaster specific guidelines pertaining to that particular disaster.  Ex. F (Declaration of Neal Swenson ("Swenson Decl.") at ¶ 4).  After this initial conference call, ALLTECH deploys Field Managers (who are employees of ALLTECH) to the affected region, and then establishes a temporary field office as close to the affected region as possible for its Managers (not the inspectors).  Id. ¶ 5.  Once a Task Order is issued by FEMA, ALLTECH contacts inspectors to perform on-site inspections.

The percentage of inspectors who choose to accept an offer to conduct inspections varies by disaster.  Ex. F (Swenson Decl. ¶ 11).  For example, ALLTECH usually makes its first contact with inspectors who live near the affected disaster area.  In ALLTECH's experience, it is unlikely that inspectors will forgo an opportunity to perform inspections locally because their profit increases by the cost savings on expenses for meals and lodging.  Id.  By contrast, if a larger disaster strikes, the acceptance rate drops off because a higher percentage of inspectors must travel to the affected area and are unwilling to do so because their costs reduce potential profits.  Id.  Offers often are rejected because inspectors are busy, for example, running their own business or engaging in other work.  Id.; Ex. D (Middleton Decl. ¶ 18).

6

The percentage of inspectors accepting an offer of employment also may depend on the location of the disaster.  Ex. F (Swenson Decl. ¶ 12).  For example, if a disaster strikes in Puerto Rico, an inspector who does not speak Spanish may not accept a task order due to the language barrier and the personal cost of hiring a translator or guide.  Id.  Others inspectors may choose to accept the offer and will hire a local guide or translator at their own expense to facilitate their fulfillment of their contractual obligations to ALLTECH.  Id.

The inspector can, without penalty and within his or her sole discretion, indicate that he or she is not available.  Ex. D (Middleton Decl. ¶¶ 18-19); Ex. G (Declaration of Judith L. Dean ¶15, ("Dean Decl.")); Ex. H (Declaration of Gary Ramirez ("Ramirez Decl.") ¶ 12)); Ex. C (Baker Decl. ¶11); Ex. F (Swenson Decl. ¶ 13); Ex. I (Declaration of Bruce Breedlove ("Breedlove Decl.") ¶ 25).  No inspector is required to affirm eligibility to perform inspections or report to a disaster site.  Id.    ALLTECH will continue to call to offer inspections even if inspectors have refused prior offers of inspections.  Id.

**2.      ALLTECH And Inspectors Enter Into Independent Contractor Agreement, Memorializing The Nature Of The Inspectors' Services**

To confirm independent contractor status, each ALLTECH inspector enters into an Independent Contractor Agreement (the "Agreement") governing the business relationship between ALLTECH and the inspector.  The Agreement expressly addresses the parties' intention to enter into an independent contractor relationship, wherein the contracting inspector controls the means and method of performing inspections.  Ex. H (Ramirez Decl. ¶¶ 6, 10); Ex. C (Baker Decl. ¶ 9); Ex. F (Swenson Decl. ¶ 14); Ex. D (Middleton Decl. ¶ 10, 14); Ex. G (Dean Decl. ¶ 12); Ex. I (Breedlove Decl. ¶15).

### 3.   Inspectors Are Responsible For Their Own Expenses And Use Their Own Equipment

When conducting inspections, inspectors use their own tools, including their own vehicle, flashlight, boots, cellular telephone, measuring device and other equipment.   Ex. C (Baker Decl. ¶ 12); Ex. D (Middleton Decl. ¶ 17); Ex. G (Dean Decl. ¶16).   They are also responsible to pay for their own meals, lodging and transportation, including gas mileage.   Ex. G (Dean Decl. ¶11); Ex. H (Ramirez Decl. ¶ 15); Ex. C (Baker Decl. ¶ 7); Ex. F (Swenson Decl. ¶ 6); Ex. D (Middleton Decl. ¶ 12); Ex. I (Breedlove Decl. ¶ 17).   No per diem is paid to cover these or any other expenses.

ALLTECH provides inspectors with a computer and camera issued by FEMA. Ex. A (Inglis Aff. ¶ 19); Ex. H (Ramirez Aff. ¶ 15).   If an inspector damages the computer or camera, it is the inspector's responsibility to pay for the cost of repair or replacement. Ex. H (Ramirez Decl. ¶ 15).     All equipment not provided by FEMA is provided by inspectors themselves.

If an inspector accepts an offer from ALLTECH to perform inspections, ALLTECH will pay for mileage or airfare to facilitate inspectors' transportation to the affected region.   However, if the inspector elects to leave sooner than scheduled by the inspector, the inspector must negotiate as to the cost of return airfare.

### 4.   Inspectors Interaction With ALLTECH Employees Varies Based On The Size And Nature Of The Disaster

Like any other contractor, when inspectors first arrive in an affected area, they are asked to "check in" at the temporary field office location.   Notice of FEMA guidelines is made available to inspectors before inspections are commenced.   Ex. F (Swenson Decl. ¶ 8). Thereafter, the degree to which Field Operations Managers interact with inspectors varies greatly depending upon the scale of the disaster and its location.   Id. ¶¶ 9-10; Ex. D (Middleton Decl. ¶¶

22-25).   For example, during smaller disasters, Field Office Managers have little, if any, contact with inspectors following an initial briefing at the temporary field office.  Ex. F (Swenson Decl. ¶ 10); Ex. D (Middleton Decl. ¶ 25).  Presenting an overview of a task order to relate FEMA-provided disaster specific guidelines is not antithetical to contractor status.

**5.     Since Inspectors Are Compensated On A "Per Inspection" Basis, Their Profitability Varies Based Upon The Disaster, Business Related Costs And The Pace And In the Manner In Which They Choose To Conduct Inspections**

Inspectors are compensated on a "per inspection" basis pursuant to the Agreement.  Ex. H (Ramirez Decl. ¶¶ 13-14).  As such, inspectors have the opportunity to earn a greatly varying profit (or suffer a loss) depending on how quickly and accurately they perform their inspections (and the expenses that the inspectors incur in doing so).   Inspectors are not given a quota.  They can perform as many or as few inspections as they want.  Ex. C (Baker Decl. ¶ 9).

Inspectors are not paid for inspections which do not meet FEMA's criteria;[4] ALLTECH estimates that as many as 2.5% of inspections are rejected.  Partial payment for deficient inspections can be received only if the deficiency in the inspection is corrected. Inspectors must pay their own expenses at a disaster site, despite the possibility that they will receive few or no assignments under a Task Order.  Ex. A (Inglis Aff. ¶ 17).  Thus, in addition to the varying profit an inspector makes based on his or her own unsupervised work, the inspector runs the risk that accepting a contracting assignment will result in a loss due to high personal overhead or early departure for professional or personal reasons.  Id. ¶¶ 17, 22-23).

In addition, an inspector's profitability fluctuates depending on the type of disaster to which the inspector elects to respond.  For example, inspections performed following

---

[4] For example, the inspector must obtain a completed, signed FEMA application form.  If the inspector fails to do so, he receives no compensation for the inspection unless that same inspector corrects the error.

tornadoes may last for only about one week.  In contrast, inspections in large hurricane disasters may last for months at a time.  Ex. H (Ramirez Decl. ¶¶ 13-14); Ex. G (Dean Decl. ¶9).  In addition, if the inspector responded to a flood, damage may be limited to areas near creeks or rivers.  As a result, significant time may be spent travelling to and from damaged properties.  Fewer inspections can be performed per day.  The inspector's cost is likely to be high because he is responsible for the cost of transportation to and from each inspection site.  By contrast, a tornado may damage several homes in close proximity, allowing more inspections to be performed each day.  Since inspectors are compensated on a per-inspection basis, regardless of the type of disaster, personal profitability varies.  Ex. H (Ramirez Decl. ¶¶ 13-14).

**6.    Plaintiff Lomascolo's Admissions Regarding His Own Independent Contractor Status Rebut Any Claim That A Class Should Be Certified**

In sworn testimony given before the Pennsylvania Department of Labor and Industry, Plaintiff Lomascolo conceded that (1) he signed an independent contractor agreement; (2) he was at risk of sustaining a loss or making a profit based on the number of inspections he performed; and, (3) he was responsible for obtaining his own lodging, his own sustenance, onsite transportation and all expenses other than initial airfare. Ex. J (Unemployment Insurance Transcript, pages 23, 26, 28).  Plaintiff Lomascolo also conceded that he drove his own vehicle or rented a vehicle, and that he, not ALLTECH, paid for the fuel necessary to conduct inspections.  Id. at page 29.  He received no reimbursement for hotel or meals.  Id.

Lomascolo also conceded that the duration and scope of an inspector's on-site relationship with ALLTECH varies depending on the number and locale of homes affected by a Presidentially declared disaster.

Despite these fatal facts, Lomascolo asks this Court to certify that he is "similarly situated" to a broad variety of inspectors, regardless of whether they worked on the Katrina

disaster, the Pennsylvania floods, or any other Presidentially declared disaster in the United States during the past three years and seemingly regardless of whether they contracted with the ALLTECH or PaRR Defendants.  He has not met his burden and collective action certification should be denied.

## ARGUMENT

### BECAUSE PLAINTIFFS CANNOT ESTABLISH THAT THEY ARE SIMILARLY SITUATED TO PUTATIVE CLASS MEMBERS, CONDITIONAL CERTIFICATION AS A "COLLECTIVE ACTION" SHOULD BE DENIED

### A.    General Legal Principles Governing FLSA Collective Actions

Under the FLSA, an action by a plaintiff on behalf of himself and others similarly-situated is brought pursuant to 29 U.S.C. § 216(b).  Under § 216(b), the plaintiff bears the burden of establishing that he is "similarly situated" with the class he wishes to represent.  Bernard v. Household Intern, Inc., 231 F. Supp. 2d 433, 435 (E.D. Va. 2002).  An employee cannot join a collective action unless he or she consents in writing to do so and such consent is filed with the Court. 29 U.S.C. § 216(b).

In Hoffmann-La Roche, Inc. v. Sperling, the Supreme Court held that a District Court's decision to authorize a plaintiff to send notice to potential class members to inquire whether they wish to join is discretionary, not mandatory.  Hoffmann-La Roche, 493 U.S. 165, 170 (1989) ("We hold that district courts have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) . . . by facilitating notice to potential plaintiffs"); Bernard, 231 F. Supp. 2d at 435 (quoting Hoffmann-La Roche, 493 U.S. at 174).  Although a District Court has discretionary power to authorize a plaintiff to send notice to potential class members under the "opt-in" provision of the FLSA, it may do so only under "appropriate circumstances."  Braunstein v. Eastern Photographic Laboratories, Inc., 600 F.2d 335 (2d Cir. 1978); Hoffman v. Sbarro, Inc.,

982 F. Supp. 249, 261 (S.D.N.Y. 1997).  To determine whether "appropriate circumstances" exist, the threshold issue is whether the named plaintiffs have demonstrated that potential class members are "similarly situated" to them.  See 29 U.S.C. § 216(b); Hanley v. Hand N'Heart, L.L.C., et al., 2007 U.S. Dist. LEXIS 64661 at *10 (E.D. Va. 2007) (finding plaintiffs failed to meet burden of showing existence of 'similarly situated' individuals for court to become involved in the notice process); Bernard, 231 F. Supp. 2d at 435 (finding information provided by plaintiffs insufficient to establish individuals outside of Virginia were similarly situated).

Plaintiffs have not demonstrated a likelihood of success on the merits.  Since Defendants have demonstrated that there is no likelihood of success on the merits due to the lack of employee status, applicability of the motor carrier exemption and the absence of proof of systemic overtime pay violations, notice should not issue.  See Amendola v. Bristol-Myers Squibb Co., 2008 U.S. Dist. LEXIS 43681 (S.D.N.Y. June 4, 2008) citing In re Initial Pub. Offering Sec. Litig. ("In re IPO"), 471 F.3d 24 (2d Cir. 2006); see also Madrid v. Minolta Bus. Solutions, 2002 U.S. Dist. LEXIS 18539 (S.D.N.Y. Oct. 1, 2002).[5]

1. **The Standard Applicable To Determining Whether Individuals Are "Similarly Situated"**

While the FLSA and the regulations do not define the phrase "similarly situated," courts consistently have held it is Plaintiffs' burden to demonstrate that other individuals are "similarly situated" to them "by presenting "some factual evidence" beyond mere allegation of a potential class."  See Hanley, 2007 U.S. Dist. LEXIS 64661 at *10.  As such, unsupported assertions of widespread violations are not sufficient to meet the plaintiff's burden.  Bernard, 231 F. Supp. 2d at 435 ("Before this court can order issuance of a notice . . . plaintiffs must

---

[5] While the LexisNexis service indicates the Madrid opinion was withdrawn, the withdrawal in question was a purely procedural matter.  The undersigned served as counsel for Defendant in that case, and submits that Judge Daniels' analysis and decision were not withdrawn.

demonstrate that there are others similarly situated.  Mere allegations will not suffice"); <u>Freeman v. Wal-Mart Stores, Inc</u>., 256 F. Supp. 2d 941, 945 (W.D. Ark. 2003).

The requirement that proposed class members be 'similarly situated' to the named plaintiffs ensures that the collective action promotes the 'efficient resolution of common issues of law and fact arising from the same alleged discriminatory activity.'"  <u>Hunter v. Sprint Corp.</u>, 346 F. Supp.2d 113, 119 (D.D.C., 2004), <u>citing</u> <u>Hoffmann-La Roche, Inc. v. Sperling</u>, 493 U.S. 165 (1989); <u>Mike v. Safeco Ins. Co. of America</u>, 274 F. Supp.2d 216, 220 (D. Conn. 2003) ("the court must be satisfied that there is a basis to conclude that questions common to a potential group of plaintiffs would predominate a determination of the merits in this case.").  To enforce similarity of claims, "courts emphasize that class members in a collective action must share more than a common allegation that they were denied overtime or paid below the minimum wage. The class members must put forth a common legal theory upon which each member is entitled to relief."  <u>Id</u>.  In sum, proposed FLSA collective action members "must raise similar legal issues as to coverage, exemption or nonpayment of minimum wages or overtime."  <u>De Jesus De Luna Guerrero v. N.C. Grower's Ass'n</u>, 338 F.Supp.2d 649 (E.D.N.C. 2004).

Even if Plaintiffs' and their putative "claim-mates" claims arguably are similar to each other, it is well settled that if individualized factual determinations predominate, putative class members are not "similarly situated" and notice should not be authorized.  <u>See</u> <u>Grace v. Family Dollar Stores, Inc.</u>, 2007 U.S. Dist. LEXIS 66096 at *6 (W.D.N.C. Sept. 6, 2007)(declining to authorize notice because individualized inquiries are necessary to resolve issues of classification and job duties); <u>Diaz v. Elect. Boutique of Am., Inc.</u>, 2005 U.S. Dist. LEXIS 30382, *13-15 (W.D.N.Y. Oct. 17, 2005) (finding plaintiffs were not "similarly situated"

to those they sought to represent based on the existence of individual inquiries needed to resolve plaintiffs' exempt status).

Applying the foregoing standard, courts in this Circuit have not shied away from refusing to authorize notice based on Plaintiff's failure to demonstrate that putative class members are similarly situated. <u>See</u>, <u>e.g.</u>, <u>Hanley</u>, 2007 U.S. Dist. LEXIS at *13 ("the statements in the affidavit amount to no more than conclusory allegations, and do not rise to the minimum level of evidence required under the law.  Accordingly, the Court finds Plaintiffs have not met their burden of showing the existence of 'similarly situated' individuals for the Court to become involved in the notice process."); <u>Bernard</u>, 231 F. Supp. 2d at 435 ("The information provided by plaintiffs, both in the pleadings and in supporting declarations and exhibits, is insufficient to support allegations that defendant has a company-wide policy resulting in potential FLSA violations."); <u>Grace</u>, <u>supra</u>.

When, as in this case, courts confront situations where individualized inquiries are required as to whether individuals appropriately were classified under the FLSA, and the extent to which the plaintiff's duties can be compared to other individual's duties, federal courts throughout the country generally deny (or severely limit the scope of) collective certification of FLSA cases.  <u>See</u> <u>Dreyer v. Altchem Envt. Servs., Inc.</u>, 2006 U.S. Dist. LEXIS 93846, *4 (D.N.J. December 12, 2006); <u>Harris v. FFE Transp. Servs., Inc.</u>, 2006 U.S. Dist. LEXIS 51437 (N.D. Tex. May 15, 2006) (refusing collective certification based upon individual nature of claims).  <u>Aguirre v. SBC Communications, Inc.</u>, 2006 U.S. Dist. LEXIS 22211 (S.D. Tex. Apr. 11, 2006); <u>Landsberg v. Acton Enter., Inc.</u>, 2006 U.S. Dist. LEXIS 23439 (S.D. Ohio Mar. 22, 2006); <u>Rodgers v. CVS Pharmacy</u>, 2006 U.S. Dist. LEXIS 23272 (M.D. Fla. Mar. 22, 2006); <u>Wombles v. Title Max of Alabama, Inc.</u>, 2005 U.S. Dist. LEXIS 34733 (M.D. Ala. Dec. 7,

2005); Tyler v. Payless Shoe Source, Inc., 2005 U.S. Dist. LEXIS 31682 (M.D. Ala. Nov. 22, 2005); Persin v. Career Builders, LLC, 2005 U.S. Dist. LEXIS 23095 (N.D. Ill. Sept. 21, 2005) (refusing collective certification and noting the lenient standard applied at the notice phase "does not absolve [the plaintiff] of his burden to show some sort of indication that he and the group he seeks to address share some fundamental characteristics"); Harrison v. McDonald's Corp., 411 F. Supp. 2d 862 (S.D. Ohio 2005); Horne v. U.S. Auto. Assoc., 279 F. Supp. 2d 1231 (M.D. Ala. 2003) (refusing collective certification where the plaintiff failed to sufficiently identify individuals who worked overtime hours pursuant to alleged policies and procedures of employer); Freeman v. Wal-Mart Stores, Inc., 256 F. Supp. 2d 941 (W.D. Ark. 2003) (refusing collective certification where the plaintiff failed to show that purported class of thousands of employees with materially different duties and responsibilities were similarly situated, holding "it is incumbent upon [p]laintiff to propose a class that is sufficiently defined and manageable from the outset"); Marsh v. Butler Co. Sch. Sys., 242 F. Supp. 2d 1086 (M.D. Ala. 2003) (refusing collective certification, finding that a plaintiff must show a commonality between his claims and those of the potential plaintiffs that is "beyond the mere facts of job duties and pay provisions, because without such a requirement, it is doubtful that § 216(b) would further the interests of judicial economy . . . ."); Sheffield v. Orius Corp., 2002 U.S. Dist. LEXIS 23781 (D. Or. Sept. 13, 2002) (refusing collective certification and noting that "[p]utative class members must share more than a common allegation that they were denied overtime or paid below the minimum wage. The class members must put forth a common legal theory upon which each member is entitled to relief"); Levinson, et al v. Primedia, Inc., 2003 U.S. Dist. LEXIS 20010, *4 (S.D.N.Y. 2003) ("While the factual showing that they must make at this stage is 'modest', it must be 'sufficient to demonstrate that they and potential plaintiffs together were victims of a

common policy or plan that violated the law."); White v. Osmose, Inc., 204 F. Supp. 2d 1309 (M.D. Ala. 2002) (refusing to certify a nationwide class of current and former employees who were allegedly "similarly situated" with respect to their job duties and pay because there was no evidence that the employer's policies necessarily led to FLSA violations on a national basis).

Here, the very nature of Plaintiffs' claim that they, and those purportedly "similarly situated," were "employees" rather than "independent contractors" under the terms of the FLSA, demands an individualized factual inquiry that is not appropriate for collective action treatment.  Consequently, notice should be denied.

**B.**     **There Is No Evidence That The ALLTECH Inspectors Are Similarly Situated To The PaRR Inspectors**

In support of their application for collective action certification, Plaintiffs have submitted Affidavits from four individuals who claim to have had an employer-employee relationship with the ALLTECH Defendants.  Each Affidavit contains bare assertions regarding the alleged treatment of "all Alltech disaster housing inspectors" (emphasis added).[6]  Noticeably absent from the supporting affidavits (and from Plaintiffs' Memorandum of Law) is any assertion that PaRR inspectors are "similarly situated" to ALLTECH inspectors.  This absence is glaring and significant.  Plaintiffs cannot be victims of a "common policy or plan" where they each allege an employer-employee relationship with a different entity.  Indeed, it is undisputed that PaRR and ALLTECH are two completely separate entities, with no involvement in each other's decisions regarding classification or compensation of inspectors.

---

[6] Plaintiffs also have submitted Affidavits from seven individuals who claim to have had an employer-employee relationship with the PaRR Defendants (and not ALLTECH).  Each of these affidavits contains bare assertions regarding the alleged treatment of "All PaRR disaster housing inspectors" (emphasis added).

Since Plaintiffs have failed to, and quite simply cannot, meet their burden of establishing that they are similarly situated to each other, their application for discretionary collective action treatment must should be denied.

**C.      The Determination Of Whether An Individual Is Properly Classified As An Independent Contractor For FLSA Purposes Requires An Individualized Inquiry**

The inquiry into whether an inspector was misclassified as an independent contractor is, by its very nature, an individualized, factual inquiry that is not suitable for collective action treatment. See Grace, 2007 U.S. Dist. LEXIS 66096, *6 (to determine whether individualized inquiries are necessary, and collective action status inappropriate, courts review, among other things, "whether the classification [decision] sufficiently establishes the element of being "similarly situated".)  Indeed, as one District Court recently found:

> In order to determine who is an independent contractor and who is an employee, the court would be required to make a fact intensive individual determination as to the nature of each potential claimant's employment relationship with (defendant).... Where this is the case, certification of a collective action under the FLSA is inappropriate.

Pfaahler v. Consultants for Architects, Inc., 2000 U.S. Dist. LEXIS 1772 (N.D. Ill., February 11, 2000) (denying notice to putative class where plaintiffs alleged they were owed overtime wages since they were misclassified as independent contractors rather than employees).

When examining whether an individual is an independent contractor or employee, courts review the totality of the circumstances to determine the "economic reality" of the relationship.   Under a six-factor economic realities test utilized by the Fourth Circuit, the following factors are considered: (1) the degree of control exercised by the employer over the workers; (2) the workers' investment in the business; (3) the degree to which the "employee's" opportunity for profit or loss is determined by the employer; (4) the degree of skill and

independent initiative required to perform the work; (5) the permanence or duration of the relationship; and, (6) whether the service rendered is an integral part of the alleged employer's business.  See Schultz v. Capital Intern. Sec. Inc. 466 F.3d 298, 304-05 (4th Cir. 2006); see also United States v. Silk, 331 U.S. 704 (1947) (finding key factors are the relative degree of control; the worker's opportunity for profit and loss; his investment in facilities; the permanency of the relationship; and, the skill required to perform the assignment).  No single factor is dispositive. See Westfall v. Kendle Int'l, et al., 2007 U.S. Dist. LEXIS 11304 at *25.

Tellingly, Plaintiffs have not cited to a single case from the Fourth Circuit, or any of its District Courts, where plaintiffs' successfully asserted they were misclassified as independent contractors under the FLSA.  Rather, Plaintiffs seek to evade the fact that the case law does not support their claim that they are employees, rather than independent contractors. See, e.g., Chao v. Mid-Atlantic Installation Servs., 2001 U.S. App. LEXIS 14804 (4th Cir. 2001) (cable installers are independent contractors because of their ability to control their own profits and losses; high degree of control over manner in which work is performed; investment in equipment and level of skill required).

Since a determination of whether an individual is an employee or independent contractor is a fact intensive inquiry, conditional certification should be denied.

1.    **The Affidavits Submitted By Plaintiffs Are Insufficient To Satisfy Their Burden To Demonstrate That They Are Similarly Situated To Other ALLTECH Independent Contractors**

Even if the Court were to find that Plaintiffs have set forth sufficient allegations to demonstrate that they may have been misclassified as independent contractors (which it should not), Plaintiffs have not made a sufficient showing, as they must, that the same is true for other potential plaintiffs.  Indeed, the Affidavits submitted by Plaintiffs in support of their instant Motion demonstrate that they have no firsthand knowledge about how other inspectors operated,

how they interacted with ALLTECH or the lack of control exercised by ALLTECH.  What's more, the disparities between the Affidavits submitted by Plaintiffs and the Affidavits provided by ALLTECH – submitted by individuals within Plaintiffs' proposed putative class – highlight the inappropriateness of this case for collective action treatment.  Rather than showing any similarities, the Affidavits highlight that each inspector rendered services to ALLTECH – and ran his or her own independent business – in a varied, individualized fashion.

As the Court in Grace recently ruled, conditional certification is not appropriate where these types of variations within the pool create a fact-intensive inquiry:

> variations in duty are the very reason why a collective action is inappropriate. A determination of whether or not the plaintiffs are similarly situated would require an [sic] fact-specific inquiry into the daily duties of each plaintiff, a determination that defeats the point of a collective action. *A collective action is never appropriate for situations where a court must make an individual determination of each plaintiff's day-to-day activities.* In this case, the action relates to the personal circumstances of each individual employee, not a generally-applicable policy.

Grace, 2007 U.S. Dist. LEXIS at *8 (emphasis added).

The Affidavits submitted by the ALLTECH Defendants unequivocally establish diversity (not similarity) with respect to the degree of control; the worker's opportunity for profit and loss; and the degrees of infrequency of contact between ALLTECH and inspectors.  At the very least, these factors vary greatly by location where inspections are conducted; by disaster addressed by the inspectors; and, other individualized inquiries.    Because this is the case, certification of a collective action under the FLSA would be "inappropriate" and should be denied.

(a) **The Inspectors Are Not Similarly Situated To Each Other Because Of The Different Ways In Which They Choose To Render Services (If At All)**

The unique aspects of the FEMA disaster inspection process mandates a finding that individualized inquiries predominate over commonality. Varying factors included the number of ALLTECH personnel on the ground (and, thus, the degree of control or supervision central to the inquiry of whether an individual is an independent contractor or employee); the inspector's opportunity for profit or exposure to loss; the inspector's retention of staff or subcontractors; on-site costs; and lack of opportunity for potential assignments. For these reasons, if a collective action is allowed to proceed, the Court would be compelled to engage in numerous mini-trials to analyze the degree of control.

ALLTECH's Field Office Managers have little or no contact with inspectors following an initial briefing at a temporary field office during smaller disasters. Each inspector renders services in a different manner, depending on experience and motivation. Indeed, the number of inspections completed and resulting profit to the inspectors from their contractual relationships with ALLTECH fluctuates depending on the type of disaster to which they elect to respond. Ex. H (Ramirez Decl. ¶14); Ex. G (Dean Aff. ¶10).

(b) **Plaintiffs Are Not Similarly Situated Because An Individualized Analysis Is Required To Determine How Many Hours, If Any, Each Inspector Allegedly Worked**

In addition to the individualized inquiry required as to whether each inspector was misclassified as an independent contractor, the Court also must conduct an individualized inquiry into the number of hours worked, and whether in any given workweek, an inspector worked over 40 hours. See Section C(5), *infra*.

Thus, a determination of the number of hours worked by each inspector will be an individualized inquiry in the number of inspections performed and the manner of performance. These and other factors are not suitable for collective action treatment because it will be difficult to manage discovery, fashion a collective action-wide remedy; and, to conduct representative discovery (instead of individualized depositions and discovery). These factors all weigh against certifying a collective action.

(c)     **Neither Internal Revenue Service Determinations Nor Pennsylvania Department Of Labor Determinations Are Binding On This Court. To The Contrary, Individualized Inquiries Are Required To Determine The Proper Classification Of Each Inspector As A Contractor**

Before an individualized inquiry is made as to the myriad of task-order related differences, the Court must conduct an individualized inquiry as to whether each individual inspector was misclassified as an independent contractor. Since, contrary to Plaintiffs' assertions, this Court is not bound by the determinations of the Pennsylvania Department of Labor and Industry ("PA DOL") or the Internal Revenue Service ("IRS"), a multitude of individual mini-trials will be needed as to status. The determination of a local PA DOL field office referee and its Board of Review (located in Harrisburg, Pennsylvania) does not bind this Court - particularly where reliance was placed solely on Pennsylvania law and, at best, an analysis of facts and circumstances unique to Lomascolo. Indeed, the Pennsylvania Supreme Court has held that factual findings in unemployment compensation hearings should not be accorded preclusive effect in subsequent litigation. Rue v. K-Mart Corp., 552 Pa. 13, 21, 713 A.2d 82, 86-87 (1998).

In Rue, the plaintiff was discharged from his position for theft. Id. at 15, 713 A.2d at 16. At the unemployment hearing, the administrative law judge found that the

employee had not committed theft.  Id. at 16, 713 A.2d at 84.  The employee subsequently sued K-mart for defamation, contending that collateral estoppel required the trial court to accept the factual finding that theft had not been committed.  Id.  That argument was rejected by the Pennsylvania Supreme Court.

The Court found that, by the very nature of unemployment hearings, the employer did not, as a matter of law, have a "full and fair opportunity to litigate the issue."  To the contrary, unemployment hearings typically are of a "fast and informal nature" and expose the employer to "negligible economic consequences."  Id. at 17-21.  Consequently, the Supreme Court held that the factual findings of the Pennsylvania unemployment hearing should not be accorded preclusive effect.  Id.

Similarly, the fact that the IRS formed its own conclusion without a trial with respect to the classification as independent contractors of a few inspectors does not bind this Court.  To form its conclusion, the IRS did not address those factors delineated in the Fourth Circuit's well recognized economic realities test.  Instead, a local office of the Internal Revenue Service in Vermont seemingly used its own test and did so in a non-adjudicating process.  The ALLTECH Defendants did not have a full and fair opportunity to challenge factual assertions relied upon by the IRS in its decision.   For example, there was no trial; no sworn testimony; no evidence introduced; the Internal Revenue Service office in question merely rubber-stamped subsequent requests for "employee" status.   The fact that the IRS determination has no preclusive effect was recognized by the Referee at Lomascolo's unemployment hearing.  When Lomascolo tried to introduce the IRS determination as evidence to support his claim for unemployment insurance, the Referee properly refused to allow it, citing Cowen v. Unemployment Compensation Board of Review, Docket No. 1946, Central District 2006, filed

July 30, 2007 (recognizing that an IRS determination is not binding on the Referee or Board in a unemployment compensation proceeding).  As the Referee explained, "I'm going to base my Decision on the, the facts that I get, not on what the IRS might have said in the determination." See Ex. J (Unemployment Insurance Transcript p. 21); see also Davis v. Hartland Homes, 2006 U.S. Dist. LEXIS 70599, *23 (D. Neb. September 28, 2006) ("Because the IRS did not act in a judicial capacity in responding to Davis's request for a determination, its legal conclusion that she worked as an employee also can have no preclusive effect in this litigation"); Morrison v. Int'l Programs Consortium, 253 F.3d 5, 9-10 (D.C. Cir. 2001) (finding administrative determinations of employment status do not determine whether worker is covered by FLSA); McGuiggan v. CPC Int'l, 84 F. Supp. 2d 470, 379 (S.D.N.Y. 2000) (finding IRS determination did not determine issue of employment status under FLSA); Thomas v. City of Hudson, 1996 U.S. Dist. LEXIS 7244, *15 (N.D.N.Y. May 20, 1996) (citing Frankel v. Bally, Inc., 987 F.2d 86, 89 (2d Cir. 1993)) (explaining the common law agency test for determining when an individual is an employee or independent contractor is not applicable for FLSA purposes).   For these reasons, the Court should not consider the IRS Determinations upon which Plaintiffs rely.

Since both the IRS and PA DOL opinions rely upon factual conclusions asserted by only a few individuals, they should be rejected as evidence of "similarly situated" status or employee status.  The Affidavits submitted herewith demonstrate the numerous, fact-specific, inquiries which this Court would need to engage in if the class is certified.  As such, this case is not suitable for collective action treatment.

**(d)** **The Potential Collective Action Members Are Not Similarly Situated Because An Individualized Analysis Is Required to Determine Whether Each Inspector Is Subject To The Motor Carrier Exemption For All Or Part Of The Period Covered By The Lawsuit**

**i.**     **The Motor Carrier Exemption**

In the event this Court finds the inspectors to be subject to the FLSA, another issue at trial requiring individualized inquiry will be applicability of the "motor carrier" exemption.  29 U.S.C. § 213(b).  This exemption is set forth in 29 U.S.C. § 213(b)(1) of the FLSA, which provides:

> The provisions of section 207 of this title [the overtime provisions] shall not apply with respect to—
>
> (1) any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49 [The Motor Carrier Act].

29 U.S.C. § 213(b)(1).

Employees who are covered by the Motor Carrier Act, 49 U.S.C. § 31502 ("MCA"), are exempt from the overtime provisions of the FLSA.  Whether the Secretary of Transportation has actually established qualifications and maximum hours of service is immaterial; the controlling consideration is whether the Secretary has the *power* to do so.  29 C.F.R. § 782.1(a); see also Klitzke v. Steiner Corp., 110 F.3d 1465, 1468 (9th Cir. 1997); Turk v. Buffets Inc., 940 F. Supp. 1255, 1259 (N.D. Ill. 1996) ("The DOT retains its jurisdiction over the specified employees regardless of whether it has chosen to actually exercise its regulatory authority, and the overtime exemption applies to such employees despite the lack of DOT regulation").

The term "motor private carrier" is defined as a person (other than a "motor carrier,")[7] transporting property by motor vehicle when—

    (a)  the transportation is as provided in section 13501 of this title [Title 49];

    (b)  the person is the owner, lessee, or bailee of the property being transported; and

    (c)  the property is being transported for sale, lease, rent, or bailment to further a[n] enterprise.

49 U.S.C. § 31501(2) (incorporating the definition in 49 U.S.C. § 13102(12)).  An employee who meets these requirements satisfies the overtime pay exemption.  See Friedrich v. U.S. Computer Services, 974 F.2d 409, 412 (3d Cir. 1992); Martin v. Airborne Express, 16 F. Supp. 2d 623 (E.D.N.C. 1996).[8]

### ii.    The Applicability Of The Motor Carrier Exemption To ALLTECH's FEMA Inspectors

An individualized analysis is necessary to determine the applicability of the motor carrier exemption to each inspector.  The motor carrier exemption applies when the employee is engaged in interstate activity.  Inspectors traveling across state lines to conduct inspections would be covered by the exemption, while inspectors performing inspections within their State of residence may not, unless they were transporting goods shipped from out-of-state.  See, e.g. Thomas v. Wichita Coca-Cola Bottling Co., 968 F.2d 1022 (10th Cir. 1992).

---

[7] Inspectors are not "motor carriers" because they do not provide transportation of passengers or property for compensation.  See 49 U.S.C. § 13102.

[8] On August 10, 2005 (a date within the potential limitation period for this lawsuit), the definition of "motor private carrier" was modified via the enactment of "the Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users" ("SAFETEA-LU").  King v. Asset Appraisal Servs., 470 F. Supp. 2d 1025, 1030 (D. Neb. 2006).  At least one Court held this legislation limited the applicability of the motor carrier exemption by narrowing the definition of motor vehicle to commercial vehicles, Musarra v. Digital Dish, Inc., 454 F. Supp. 2d 692 (S.D. Ohio 2006), though Defendants do not concede the exemption no longer applies to only non-commercial vehicles since August 2005.  King, at 1030-1031.

Any inspector who traveled across state lines at least once every four months would be exempt from the FLSA requirements for that period.  See Friedrich, 974 F.2d at 410-11; Williams v. Alex's Transp., 969 F. Supp. 1142 (N.D. Ill. 1997).  For example, in Friedrich, cable installers based in Pennsylvania brought their tool kits to customer sites outside Pennsylvania via their personal vehicle or by combination of air travel and rental car.  Id.  The Third Circuit affirmed the District Court's determination that such employees came under the jurisdiction of the DOT and thus qualified for the FLSA exemption.  Id.

For inspections occurring after the enactment of SAFETEA-LU, a further inquiry may be required to determine which inspectors travel to inspection sites in vehicles weighing 10,001 pounds.  King, 470 F. Supp. 2d at 1029, fn. 5.

Thus, to determine the FLSA status of each inspector during the period covered by the Complaint, the Court will need to analyze, for each inspector:  the number of inspections performed both intrastate and interstate by each inspector and the frequency thereof.  Also required would be an analysis of the weight of the vehicles used by the inspectors.  Due to this individualized inquiry, class treatment is neither "efficient," "orderly" nor "sensible".  See Hoffmann-LaRoche, Inc., 493 U.S. at 170; see also Reich v. Homier Distrib. Co., 362 F. Supp. 2d 1009 (N.D. Ind. Mar. 22, 2005)(refusing to authorize notice because of the individual factual inquiries necessary in applying the motor carrier exemption).

**D.      The ALLTECH Defendants Have Demonstrated A Likelihood of Success On The Merits And Thus Notice Should Not Issue**

As set forth *supra*, the ALLTECH Defendants have submitted evidence to demonstrate that the inspectors were properly classified as independent contractors and, in any event, were exempt from the FLSA overtime requirements under, *inter alia*, the motor carrier exemption.  Moreover, there is no proof of systemic overtime pay violations.  Plaintiff

Lomascolo has submitted no evidence to rebut these defenses, or evidence that he or other inspectors were not exempt and regularly worked overtime hours.  In short, they have not demonstrated <u>any</u> likelihood that they will succeed on the merits of their claims, thus notice should not issue.

<u>**CONCLUSION**</u>

The Supreme Court in <u>Hoffmann La Roche</u> warned District Courts that its decision authorizing trial courts to permit notice to be issued in appropriate circumstances "does not imply that trial courts have unbridled discretion."  To avoid abuses, the Supreme Court admonished that a District Court's intervention in the notice process should not become a "solicitation of claims" (especially as here, where there are affirmative statements of disinterest in participation in a collective action).  As such, in exercising the discretionary authority, courts should be "scrupulous to respect judicial neutrality."   <u>Hoffmann La Roche</u>, 493 U.S. at 174.  Due to the reasons listed above,  collective action treatment and issuing notice to the inspectors will not provide for an "efficient resolution in one proceeding of common issues of law and fact arising from the same alleged conduct." and would, as the Supreme Court cautioned, unintentionally shift this Court's role from presiding over case management to that of soliciting claims.  <u>Hoffmann La-Roche</u>, 493 U.S. at 170.

Accordingly, because Plaintiffs have not proven they are similarly situated to those who would receive notice, and because individualized fact specific inquiries for each putative plaintiff's claim are required, Plaintiffs' motion for leave to issue notice and proceed as a collective action should be denied.

_____
/S/
PAUL J. SIEGEL, ESQ. (PJS-2245)

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on June 6, 2008, I caused a true and correct copy of the enclosed **MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION OF THIS CLASS AS A "COLLECTIVE ACTION" UNDER THE FAIR LABOR STANDARDS ACT, 29 U.S.C. 216(b)** to be served via Federal Express by depositing said copy into an official Federal Express Overnight Service depository addressed to:

Gary B. Mims, Esq.
HALL, SICKELS, FREI, KATTENBURG
& MIMS, P.C.
*Counsel for Plaintiffs. Ronald Houston and Joseph Lomascolo*
12120 Sunset Hills Road, Suite 150
Reston, VA  20190

Walter K. Lack, Esq.
Richard P. Kinnan, Esq.
*Counsel for Plaintiffs, Ronald E. Houston and Joseph Lomascolo*
ENGSTROM, LIPSCOMB & LACK, P.C.
10100 Santa Monica Blvd., 16th Floor
Los Angeles, CA  90067-4107

Karl A. Gerber, Esq.
*Counsel for Plaintiffs, Ronald E. Houston and Joseph Lomascolo*
DANZ & GERBER
13418 Ventura Boulevard
Sherman Oaks, CA  91423

Stephen M. Sayers, Esq.
Thomas P. Murphy, Esq.
Michael E. Kinney, Esq.
Stacey L. Rose, Esq.
HUNTON & WILLIAMS, LLP
*Counsel for Defendants, URS Corporation, Dewbery & Davis LLC and*
*Partnerships for Response and Recovery*
1751 Pinnacle Drive, Suite 1700
McLean, VA  22102

          /S/
    PAUL J. SIEGEL, ESQ. (PJS-2245)

I:\Clients\P\17165_KJC\118044-FLSA\Pleadings\E.D.Va\Opposition to Motion for Cond Cert\MOL re notice.doc