IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

```
                                      F I L E D
                                    ┌─────────────────┐
                                    │   JUN 2 3 2009  │
                                    └─────────────────┘
                                    CLERK, U.S. DISTRICT COURT
                                       ALEXANDRIA, VIRGINIA
```

| | |
|---|---|
| JOSEPH LOMASCOLO, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )   Civil Action No. 1:08cv1310 (AJT/JFA) |
| | ) |
| PARSONS BRINCKERHOFF, INC. | ) |
| and ALLTECH, INC., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## PROPOSED FINDINGS OF FACT AND RECOMMENDATIONS

This matter is before the Court on a joint motion seeking approval of a Settlement

Agreement and for the entry of an Amended Stipulation and Order for Dismissal with

Prejudice.[1]  Plaintiffs are John L. Abbott, Philip Amos, Stephanie Archer, Kurt Armbrust,

Ronald L. Barts, Mary J. Bell. Eloise Blackmon, Davis J. Borne, Sr., Joseph L. Boyd, II, Tiffany

Bradshaw, Michelle Cadieux, Howell Cavalier, III, Thomas Cavnar, Joey C. Charfauros,

Richard Allen Coe, Marian Kay Coe, Andrew J. Cohen, Dennis Culver, Elizabeth L. Davis,

John H. Dross, Kassandra I. Evans, Robert Evans, Robert E. Farner, Terry L. Farner, Timothy

M. Finn, Joe G. Goodman, Thomas S. Hairston, Taryn Haley, Theresa Henry, Daniel Hill,

Bobby Hitchcock, Jacqueline Jackson, Stanley Jarry, Danielle Jones, Michael Jones, Connie

Joslin-Culver, Elise Keaton, Marvin Keelen, Sr., Philip Kendis, Johnny Levatte, Della M.

Lewis, Jamal R. Lewis, Elaine M. Libby, Thomas F. Libby, Jason Scott Livingston, Matthew S.

---

[1] The Collective Action Settlement Agreement and Release of All Claims ("Settlement
Agreement") and the original version of the Stipulation and Order for Dismissal with Prejudice
are found at Docket no. 162, Exhibits 1 and 3.  The parties have since filed an Amended
Stipulation and Order for Dismissal with Prejudice, which is found at Docket no. 179.

Lohmann, Joseph J. Lomascolo, Jr., Ethan T. Marlatt, Robbeyell McCormick, Charles B.

McConlley, Kathy Mowery, Damond Muhammad, Risheem Muhammad, James O'Connor,

Roxanna Osorio Motto, Eugene Phillips, Leroy Priestley, Mary M. Randall, Brenda F. Richard,

Anthony Roberts, Gwendolyn Robinson, Roderick Russell, Paul Russo, Kevin S. Rutter,

Benjamin B. Ryan, Everett L. Sharp, Joy K. Sharp, Ira B. Simmons, Hoyt H. Simons, Tonya D.

Sly, Chad Beckwith Smith, Johnnie C. Smith, Amitra Stone, Stephanie E. Taylor, Arthur

Thrects, Alfred Vanderveer, Crystall Washington, LaShonda Washington, Rayna Watts, Alfred

L. Williams, Jr., Betty Williams, Ronald W. Wright and Michael Yankow (collectively

"Plaintiffs"). Defendants are Parsons Brinckerhoff, Inc. ("PBI") and ALLTECH, Inc.

("ALLTECH") (collectively "Defendants"). Plaintiffs and Defendants shall be referred to

collectively as the "Parties." On April 27, 2009 the joint motion seeking approval of the

Settlement Agreement was referred to the undersigned magistrate judge for a Report and

Recommendation pursuant to 28 U.S.C. § 636(b)(1). The undersigned magistrate judge is

therefore filing with the Court his Proposed Findings of Fact and Recommendations, a copy of

which will be provided to the Parties.

## Procedural Background

On November 7, 2007 Ronald E. Houston and Joseph Lomascolo, on behalf of

themselves and others similarly situated, filed a lawsuit in the United States District Court for

the Central District of California for claimed violations of 29 U.S.C. § 201 *et seq.*, the Fair

Labor Standards Act ("FLSA") (the "Lawsuit"). (Docket no. 55, att. 4). On February 11, 2008

the Honorable A. Howard Matz transferred the Lawsuit to the Alexandria Division of the United

States District Court for the Eastern District of Virginia. (Docket no. 55, att. 67-68). On

December 17, 2008 this Court granted Defendants' motion to sever unrelated claims asserted by

2

different Plaintiffs, assigning the above caption and case number to this matter, and conditionally certified the Lawsuit as a collective action pursuant to Section 216(b) of the FLSA. (Docket nos. 129, 130). The December 17, 2008 Order also required that counsel confer and agree on a notice to potential class members. Pursuant to that Order, a "Notice of Pendency of Overtime Lawsuit" (the "Notice") was prepared and sent to each person who had provided disaster housing inspection services for the Defendants since January 1, 2006. (Am. Stip. ¶¶ 5, 6).[2] Each of the Plaintiffs who decided to join the Lawsuit executed a Consent to Become a Party Plaintiff, thereby designating Joseph Lomascolo ("Lomascolo") as his or her agent, and authorizing Lomascolo to "make decisions in my behalf concerning the litigation, the method and manner of conducting this litigation; the entering of an agreement with counsel concerning attorney's fees and costs; and, all other matters pertaining to this lawsuit." (Docket nos. 150, 151, 152, 153, 154, 155, 158, 180, 183).

On January 15, 2009, the Parties filed a Joint Stipulation and Order of Dismissal as to Claims for Injunctive Relief and Count II of Complaint. (Docket no. 138). At the hearing on June 19, 2009, counsel for the Parties agreed that the reference to Count II and paragraphs 86-88 in that Stipulation should have been to Count IV and paragraphs 97-99, the claim for injunctive relief brought against these Defendants. On January 16, 2009, the Court entered the Order dismissing the Plaintiffs' claim for injunctive relief, leaving only the claim for unpaid overtime wages under the FLSA. (Docket no. 139).

On March 11, 2009 a status conference was convened before the undersigned magistrate judge, and counsel advised the Court that the Parties had reached a settlement. (Docket no.

---

[2] References to the Amended Stipulation and Order for Dismissal with Prejudice (Docket no. 179) are shown as "Am. Stip."

160). On April 24, 2009 the Parties filed their Joint Motion to Approve the Settlement

Agreement and Address the Potential Withdrawal of Consent by Named Plaintiff Lomascolo

and Enter the Stipulation of Dismissal (Docket no. 162), and noticed it for a hearing on Friday,

May 8, 2009 at 10:00 a.m. (Docket no. 163). On April 27, 2009 the Honorable Anthony J.

Trenga referred that motion to the undersigned magistrate judge for a Report and

Recommendation pursuant to 28 U.S.C. § 636(b)(1).

On April 27, 2009, the Court received a letter from a potential plaintiff, Robert Evans[3],

and a letter from plaintiff Lomascolo raising concerns with the language in the Settlement

Agreement and the proposed Order for Dismissal. (Docket nos. 164, 165). On May 1, 2009 Mr.

Lomascolo filed a copy of an e-mail he sent to Plaintiffs' counsel stating his objection to the

Settlement Agreement and the Stipulation and Order for Dismissal. (Docket no. 187). In that

email Mr. Lomascolo lists several pages and paragraph numbers in the Settlement Agreement

and Dismissal Order for which he has "concerns", but he does not specify what his concerns are

with respect to those various paragraphs. Defendants filed a response to the two letter

objections on May 5, 2009. (Docket no. 166).

At the hearing on May 8, 2009, counsel for the Plaintiffs and counsel for the Defendants

appeared before the Court and addressed the questions raised by the Court concerning the terms

and conditions in the Settlement Agreement. (Docket no. 167). Mr. Lomascolo and Everett

Sharp also appeared to raise objections to the settlement of this matter. At that hearing, the

undersigned magistrate judge found that the Plaintiffs may not have been provided with copies

of the proposed Settlement Agreement, and entered an Order directing counsel for the Plaintiffs

---

[3] Mr. Evans, by stipulation of the Parties, has been permitted to join the Lawsuit even though his consent form was not filed in a timely manner.

to provide a copy of the proposed Settlement Agreement to each Plaintiff, and setting procedures for the Plaintiffs to file objections with the Court and for Defendants to respond to any validly filed objections. (Docket no. 168). The Court set this matter down for a further hearing on the joint motion to approve the Settlement Agreement on June 19, 2009 at 10:00 a.m. On May 29, 2009 counsel for the Plaintiffs filed a Proof of Service stating that a copy of the Court's May 8, 2009 Order and the proposed Settlement Agreement had been sent to each Plaintiff. (Docket no. 176).

On May 19, 2009 five Plaintiffs, Connie Joslin-Culver, Dennis Culver, Elise Keaton, Elaine Libby and Ira Simmons, filed Stipulations for Voluntary Dismissal of their claims, pursuant to Federal Rule of Civil Procedure 41(a)(1). (Docket nos. 169, 171, 173, 174, 175). Three other individuals who do not appear to be Plaintiffs in this matter also filed such stipulations: Kurt Cordner, Kevin Fuqua and Rick MacAllister. (Docket nos. 170, 172, 178). At the hearing on June 19, 2009, counsel for the Defendants confirmed that the Defendants do not object to those Plaintiffs being dismissed from the Lawsuit. At that hearing counsel for the Plaintiffs indicated he would be filing Stipulations for Voluntary Dismissal for Thomas Libby, Robert Farner, Terry L. Farner and James O'Connor and counsel for the Defendants stated that the Defendants do not object to those Plaintiffs being dismissed from the Lawsuit.

On June 10, 2009 the Parties filed an Amended Stipulation and Order for Dismissal With Prejudice. (Docket no. 179). In paragraph 24 of that pleading, the Parties note that eight Plaintiffs had withdrawn from the Lawsuit[4], and would neither be bound by, nor receive any

---

[4] In the Amended Stipulation the Parties state that Thomas Libby withdrew from the Lawsuit; but in fact, Elaine Libby withdrew. (Docket no. 174). At the hearing on June 19, 2009 counsel for the Plaintiffs stated he would be filing a Stipulation for Voluntary Dismissal for Thomas Libby.

monies under, the terms of the Settlement Agreement. The Amended Stipulation and Order for Dismissal With Prejudice also contains a new paragraph number 16 that explicitly states that the Settlement Agreement and Stipulation do "not release or otherwise determine or affect any Plaintiff's right to make future claims against Defendants asserting retaliation, wrongful discharge, unemployment benefits entitlement, worker's compensation rights, tax issues as addressed by the IRS in any determination or other issues relating to employee or independent contractor status and shall not be construed to the contrary."

### Objections from the Plaintiffs

Eight Plaintiffs have filed with the Court some form of opposition to the Settlement Agreement in this matter. During the hearing on June 19, 2009 each submission was identified and discussed with counsel for the Parties and Mr. Lomascolo and Mr. Sharp appeared and expressed their concerns with the Settlement Agreement with the Court. Set forth below is a brief description of the issues raised by each of the eight Plaintiffs.

Robert Evans filed letters with the Court on April 27, 2009 and on June 10, 2009. (Docket nos. 164, 189). In the April 27, 2009 letter Mr. Evans states that he was not given the opportunity to join the Lawsuit and states that anyone involved in the Lawsuit will never be allowed to work for the Defendants again.[5] The June 10, 2009 letter states that Mr. Evans thought the Lawsuit was for a determination of employee status, and he does not understand why he would be receiving unpaid overtime wages but there would be no agreement regarding employment status. He also references an IRS determination regarding inspectors' employment

---

[5] On June 10, 2009 a Stipulation was filed allowing Mr. Evans to join the Lawsuit. (Docket no. 180).

status, as well as determinations by several state unemployment agencies. He states that he was hoping this Lawsuit would deter companies like the Defendants from treating inspectors unfairly. He claims that he had worked for the Defendants for ten years and is only seeking justice.

On June 1, 2009 Bobby Hitchcock filed an objection to the Settlement Agreement. (Docket no. 177). Mr. Hitchcock raises concerns about the way in which counsel has handled this matter and states that counsel represented that the intent of the Lawsuit was to declare inspectors employees. He stated that he disagrees with the formula used to calculate overtime payments and expenses but he does not provide any explanation for this disagreement. He also is concerned that over 50% of the amount being paid by the Defendants will be used to pay attorneys' fees and costs.

Kurt Armbrust filed a letter with the Court on June 9, 2009 objecting to the settlement. (Docket no. 184). Mr. Armbrust states that since the end of 2004 the Defendants have been assigning work to inspectors in a manner that precludes them from earning a "living wage" and he refers to the Request for Proposals for the FEMA contract that provides for the payment of "minimum monetary wages", which appears to be $19.00 an hour for an Inspector. Mr. Armbrust also urges the Court to address the retaliation issue, stating his belief that he has not been contacted to provide inspection services by the Defendants because he joined this Lawsuit. Mr. Armbrust suggests that the settlement fails to address the heart of the Lawsuit, an inspector's ability to earn a living wage, and asks that a class representative with more experience and knowledge of the Defendants and the issues be appointed.

7

On June 9, 2009 Ethan Marlatt filed a letter with the Court raising five issues with the Settlement Agreement. (Docket no. 185). Mr. Marlatt states that he was deployed more than any other Plaintiff during the relevant time period and that the payments he has received from inspections have been his sole source of income for over ten years. Mr. Marlatt's first concern involves the desire to have inspectors classified as employees with the expectation that they would then be provided with adequate information concerning the amount of work available and other information on which they could make an informed decision about deployment. Mr. Marlatt provides substantial information concerning the manner in which inspectors perform their duties, the knowledge and skills required in performing those duties, the dedication required and the hardships endured by the inspectors in performing their much needed duties. Mr. Marlatt is concerned that the Defendants are retaliating against him and other Plaintiffs for exercising their rights in pursuing this Lawsuit, stating that since he joined the Lawsuit the Defendants have not contacted him to perform any services. Mr. Marlatt opines that the small number of inspectors joining this Lawsuit was not the result of lack of interest or concern about the outcome, but was the result of insufficient time to opt-in and the fear of retaliation. The next area in which Mr. Marlatt believes the settlement falls short is the formula used to calculate when overtime wages would be paid by the Defendants. Mr. Marlatt states that the 1.4 hours per inspection is fundamentally flawed because it fails to take into account the expenses incurred by the inspectors and the variation in the number of inspections they may be assigned at any point in time. He believes a more appropriate way to be compensated would be a fair and living wage that takes into account the full extent of the expenses inspectors are forced to incur. Lastly, Mr. Marlett expresses concerns about counsel's lack of vigor in pursuing the employee

8

classification issue and the lack of communication with all the Plaintiffs prior to reaching an agreement in this matter.

On June 10, 2009, Ben Ryan submitted a letter to the Court asserting that there have been some possible irregularities regarding the management and litigation of this case. (Docket no. 190). He asks the Court to dig deep into the facts of this case, since significant questions exist as to the Plaintiffs' classification as independent contractors, overtime, and other issues. He refers to an IRS determination that inspectors are employees for tax purposes. Mr. Ryan asserts that he has been "blackballed" by the Defendants, that the inspectors have very few rights, as opposed to under OSHA and with other federal agencies, and that he has encountered accounting issues with the Defendants. He claims that he has worked with FEMA for over ten years, and that the respect level toward inspectors has been questionable. He claims that the emergency response system currently in place is broken, and that this case requires significant study. He references a case involving workers for Federal Express being designated employees where there was a settlement of $300,000,000.

Richard Coe filed a letter with the Court on June 12, 2009 stating that it was his understanding that the reason for this Lawsuit was to obtain a determination of employee status and that it is a "pitiful agreement". (Docket no. 192). Like Mr. Evans and Mr. Ryan, Mr. Coe refers to an IRS determination and state unemployment agency decisions that inspectors have been considered employees.

Mr. Sharp appeared at the hearing on May 8, 2009 and raised several concerns with the Settlement Agreement. On June 16, 2009 he filed a letter listing some of those concerns (Docket no. 193) and at the hearing on June 19, 2009 he provided the Court with a lengthy

9

description of his and his wife's concerns with the Settlement Agreement. Mr. Sharp's presentation and explanation of how inspectors are called into service and what is required of them was very informative. Based on his written objection and the oral presentations to the Court, it appears that Mr. Sharp has three main concerns. His first concern is that he understood the purpose of this Lawsuit to be broader than the recovery of overtime wages – he thought the real purpose was to have inspectors designated as employees with the expectation that once that determination had been made it would result in the Defendants changing the manner in which inspectors are compensated for all work performed and not just overtime work. In support of this belief he refers to several passages contained in the Complaint stating that the inspectors are wrongfully classified as independent contractors and should be considered employees. His next concern is that the Defendants have retaliated against him and the other Plaintiffs since they joined the Lawsuit by not asking them to perform any services. Mr. Sharp described the financial hardship resulting from the Defendants' failure to provide him or his wife with any work. Mr. Sharp's third concern involves the manner in which counsel has handled this matter. Mr. Sharp states that he provided substantial assistance to counsel in developing the support for a finding that inspectors should be classified as employees and in developing an appropriate formula for how inspectors should be compensated for their work. He also states that counsel refused to provide him with certain information once the settlement had been negotiated so he could contact the other Plaintiffs to discuss the status of the Lawsuit and the proposed settlement.

Mr. Lomascolo, the named plaintiff and the designated agent for the remaining plaintiffs, has submitted three letters reflecting concerns with the Settlement Agreement. (Docket nos.

10

165, 186, 187). Mr. Lomascolo signed the Settlement Agreement on behalf of himself and the other Plaintiffs on April 6, 2009. (Docket no. 162, Ex. 1). In addition to these written submissions, Mr. Lomascolo attended the hearings on May 8, 2009 and June 19, 2009 and presented his concerns to the Court and counsel. On April 27, 2009 Mr. Lomascolo filed a letter and attachments requesting that the Court not approve the settlement because he believed his rights as an employee would be terminated as determined previously by the IRS and the Pennsylvania Unemployment Compensation Review Board, which were attached to the letter. (Docket no. 165). On April 30, 2009 Mr. Lomascolo sent Plaintiffs' counsel an email stating that the Settlement Agreement was not in his best interest or the interest of the class. (Docket no. 187). This email states his understanding that the agreement would sever everyone's right to all benefits due them as an employee and he lists several paragraphs in the Settlement Agreement and the Stipulation for Dismissal which were of concern. At the hearing on May 8, 2009 Mr. Lomascolo indicated that his concern with the settlement was not the amount of the payment but the effect that the agreement would have on his right to pursue other claims as an employee.[6] On June 10, 2009 Mr. Lomascolo filed a letter acknowledging that arms length negotiations had been conducted prior to the Settlement Agreement being prepared but he was not aware of the specific language to be included in the written agreement until April 3, 2009. (Docket no. 186). In addition to the concerns about the impact the agreement would have on previous employee/employer determinations, Mr. Lomascolo states in this letter that the formula

_____

[6] After this issue was discussed, on June 10, 2009 an Amended Stipulation and Order for Dismissal with Prejudice was filed with the Court indicating that the Settlement Agreement shall not be construed to limit any Plaintiff's right to make claims to the IRS or unemployment benefits or other issues relating to employee or independent contractor status. (Docket no. 179).

used to calculate overtime wages is flawed because it uses the number of inspections performed and that a 14-hour day method should be used. During the hearing on June 19, 2009 Mr. Lomascolo was given the opportunity to explain further his concerns with the Settlement Agreement and to comment on the specific provisions identified in his April 30, 2009 email.

### Submissions Supporting the Settlement Agreement

John Abbott filed a letter with Court on June 9, 2009 indicating his acceptance of the conditions in the Settlement Agreement. (Docket no. 201).

On June 16, 2009 counsel for the Plaintiffs filed a response to the objections to the Settlement Agreement. (Docket no. 194). This response states that a large majority of the Plaintiffs support the Settlement Agreement, and provides a copy of an email from one of the Plaintiffs indicating her belief that, while the Settlement Agreement is not perfect, "it is a fair shake towards compensating us for all the overtime hours." Counsel states that the settlement is in the best interests of the class because (1) there is no guarantee or certainty of recovery at trial; (2) every class member who worked over forty hours per week based on the formula negotiated by the Parties would receive overtime compensation calculated pursuant to federal regulations; and (3) the vast majority of overtime claims are relatively small and the pro-rata costs of pursing the Lawsuit could equal or exceed any recovery obtained at trial. Through a negotiation process with the Defendants' counsel, it was agreed that the Defendants would compensate the Plaintiffs under the formula agreed to for overtime incurred during a period of three years, instead of two years, which would be a possible outcome if the case went to trial. Counsel explained the formula used to calculate overtime compensation (allocating 1.4 hours per inspection) and the reasons why that formula is a reasonable method under the circumstances presented in this case.

As to the amount of attorneys' fees, counsel states that the amount of compensation to the
Plaintiffs was the first amount determined in negotiating the amount to be paid by the
Defendants and that each Plaintiff is receiving the amount he or she is due under that formula.
Finally, counsel states that the objective of the Lawsuit was to obtain compensation for overtime
wages (which was achieved) and that the agreement, as reflected in the Amended Stipulation
and Order for Dismissal, does not impact any Plaintiff's right to pursue claims for retaliation,
wrongful discharge, unemployment benefits or other "worker's rights" claims.

Defendants also filed a response to the objections to the Settlement Agreement on June
17, 2009[7]. (Docket no. 195). This submission joins in many of the arguments made by
Plaintiffs' counsel and reiterates that the Settlement Agreement settles and extinguishes only the
overtime claims of the participating Plaintiffs for the period at issue. As such, the Settlement
Agreement does not preclude future actions or claims, or claims involving statutes or common
law other than the FLSA and analogous state wage and hour laws. There has been no
determination of the Plaintiffs' status as employees or independent contractors and this
settlement has no impact on any earlier determinations for unemployment benefits, workers'
compensation or other non-FLSA benefits and does not preclude any claims for retaliation by
the Plaintiffs.

At the hearing on June 19, 2009, counsel for the Plaintiffs and for the Defendants each
appeared and presented argument in support of a finding that the Settlement Agreement should

---

[7] On May 5, 2009 the Defendants filed a Response to the earlier letter objections from
Mr. Lomascolo and Mr. Evans in which they discuss the binding nature of the Settlement
Agreement signed by Mr. Lomascolo, the limited impact that the Settlement Agreement would
have on Plaintiffs' non-overtime claims and the need to consider the best interests of the entire
class of Plaintiffs and not Mr. Lomascolo's personal interests. (Docket no. 166).

be approved and the case dismissed.  In particular, counsel recited that the only claim before the

Court is a claim for overtime wages due under the FLSA and that the Settlement Agreement

negotiated by the parties provides the Plaintiffs with overtime compensation for three years,

which potentially is a year longer than they would receive if successful in the case.  Counsel also

confirmed that the settlement involves no Court determination on the employee/independent

contractor issue and that it would have no impact on any previous determinations or on

Plaintiffs' rights to pursue to future claims (other than for overtime wages up to the date of the

settlement).

## Factual Background

PBI is a corporation organized under the laws of the State of Delaware and ALLTECH is

a wholly-owned subsidiary of PBI.  (Am. Stip. ¶ 3).  At all times relevant, ALLTECH has

provided services for the United States Government, and specifically for the Federal Emergency

Management Agency ("FEMA") of the Department of Homeland Security, under a contract to

provide disaster-related housing inspections as part of the United States Government's program

to provide assistance to victims at Presidentially-declared disaster sites.  (Am. Stip. ¶ 3).

Plaintiffs are, or have been, similarly situated individuals who signed Independent Contractor

Agreements with ALLTECH and who performed housing inspections for ALLTECH pursuant

to its contract with FEMA.  (Am. Stip. ¶ 4).

## Findings and Recommendations

This matter comes before the Court for approval of the Settlement Agreement.  Under

the FLSA, there is a judicial prohibition against the unsupervised waiver or settlement of claims.

*Taylor v. Progress Energy, Inc.*, 493 F.3d 454, 460 (4th Cir. 2007)(citing *D.A. Schulte, Inc. v.*

*Gangi*, 328 U.S. 108, 114-16, 66 S. Ct. 925, 90 L. Ed. 1114 (1946)). Other than through the

payment of unpaid minimum wages or overtime supervised by the Department of Labor

pursuant to 29 U.S.C. § 216(c), the only way that an employee may compromise FLSA back

wage or liquidated damage claims is through a "stipulated judgment entered by a court which

has determined that a settlement...is a fair and reasonable resolution of a bona fide dispute over

FLSA provisions." *Lynn's Food Stores v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982),

*Boone v. City of Suffolk*, 79 F. Supp. 2d 603, 605 n.2 (E.D. Va. 1999). If a proposed settlement

reflects a reasonable compromise over issues actually in dispute, then approval by a district

court promotes the policy of encouraging settlement of litigation. *Lynn's Food Stores*, 679 F.2d

at 1354.

## Jurisdiction and Venue

As an initial matter, the FLSA provides that an action brought by any one or more

employees against an employer to recover unpaid minimum wages or overtime compensation, or

to pursue equitable relief, shall be brought in a Federal or State court of competent jurisdiction.

29 U.S.C. § 216(b). This action was filed in the United States District Court for the Central

District of California pursuant to the Court's federal question jurisdiction, 28 U.S.C. § 1331, for

all claims arising under the FLSA, 29 U.S.C. § 201, *et seq.*, and pursuant to the Court's

supplemental jurisdiction, 28 U.S.C. § 1367, for all of the state law claims. (Compl. ¶ 5)[8].

The Honorable A. Howard Matz, United States District Judge, transferred this Lawsuit

to this Court pursuant to 28 U.S.C. § 1404(a), which provides that for the convenience of parties

---

[8] Citations to the Complaint in this matter are shown as "Compl. ¶". The Complaint may be found at Docket no. 55, att. 4.

and witnesses and in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought. The Court evaluated ten factors considered by the Supreme Court to be relevant to a transfer analysis, *Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981), *Gulf Oil Co. v. Gilbert*, 331 U.S. 501, 508 (1947), and determined that on balance, the factors weighed in favor of transfer to the Eastern District of Virginia. (Civil Minutes of In Chambers Proceeding, Docket no. 55, att. 68). This civil action might have been brought originally in the Eastern District of Virginia under 28 U.S.C. § 1391(b) since a substantial part of the acts or omissions giving rise to the claim occurred in the Eastern District of Virginia and this Court has personal jurisdiction over the Defendants.

For these reasons, the undersigned magistrate judge recommends a finding that this Court has subject matter jurisdiction over this action, that it has personal jurisdiction over the Defendants and that venue is proper in this Court.

### Requests for Voluntary Dismissal

As discussed above, several plaintiffs have filed Stipulations for Voluntary Dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1) and others have expressed a desire to withdraw from the case and not be bound by the Settlement Agreement. The Defendants do not object to those Plaintiffs withdrawing from the case, and even though a class has been conditionally certified in this matter, the Settlement Agreement has not been entered, and it does not appear that any party will suffer prejudice if these Plaintiffs are allowed to withdraw. *Adams v. School Board of Hanover County*, 2008 U.S. Dist. LEXIS 96296, **54-58 (E.D. Va. November 26, 2008)(noting that other courts have allowed plaintiffs to withdraw an FLSA opt-in), *Bowen v. Atl. Maint. Corp.*, 546 F. Supp. 2d 55, 80 (E.D.N.Y. 2008), *Reyes v. Tex. EZPawn,*

16

*L.P.*, 2007 U.S. Dist. LEXIS 1461, *5 n.1 (S.D. Tex. Jan. 8, 2007). As a result, the undersigned

magistrate judge recommends a finding that Connie Joslin-Culver, Dennis Culver, Robert

Farner, Terry L. Farner, Elise Keaton, Elaine Libby, Thomas Libby, James O'Connor and Ira

Simmons be allowed to withdraw from this case, that their claims be dismissed without

prejudice and that they not be bound by the terms of the Settlement Agreement.

### Fair and Reasonable Resolution

Litigants should be encouraged to determine their respective rights between themselves

and there is an overriding public interest in favor of settlement, particularly in class action suits.

*Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977). There is a "strong presumption in favor

of finding a settlement fair" that must be kept in mind in considering the various factors to be

reviewed in making the determination of whether a settlement is fair, adequate and reasonable.

*Camp v. Progressive Corp.*, 2004 WL 2149079, *5 (E.D. La.).

In reviewing a proposed settlement agreement, a court may limit the proceedings as it

sees fit, so long as the record is adequate to allow it to reach an "intelligent and objective

opinion of the probabilities of ultimate success should the claim be litigated and form an

educated estimate of the complexity, expense and likely duration of such litigation, and all other

factors relevant to a full and fair assessment of the wisdom of the proposed compromise." *Flinn*

*v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975)(internal quotations omitted). At the same

time, however, the settlement hearing is not a trial, and a court's role is more a "balancing of

likelihoods rather than an actual determination of the facts and law in passing upon whether the

proposed settlement is fair, reasonable and adequate." *Id.* (quoting *Levin v. Mississippi River*

*Corp.*, 59 F.R.D. 353, 361 (S.D. N.Y. 1973)). A compromise is the essence of a settlement and

17

the trial court should not make a proponent of a proposed settlement justify each term of a settlement agreement against a hypothetical or speculative measure of what concessions might have been gained since inherent in compromise is a yielding of absolutes and an abandoning of highest hopes. *Cotton*, 559 F.2d at 1330, (citing *Milstein v. Werner*, 57 F.R.D. 515, 524-25 (S.D. N.Y. 1972)). A court is entitled to rely on the judgment of experienced counsel for the parties in performing this balancing task and absent fraud, collusion or the like, a court should be hesitant to substitute its own judgment for that of counsel. *Cotton,* 558 F.2d at 1330, *Flinn*, 528 F.2d at 1173.

In reviewing the record and evaluating the strength of the case to determine whether a proposed settlement is reasonable, adequate and fair, a court should consider (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of class counsel and class members after receiving notice of the settlement whether expressed directly or through failure to object; and (6) the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery. *Flinn*, 528 F.2d at 1173-74, *In re: A.H. Robins Co.*, 88 B.R. 755, 759 (E.D. Va. 1988).

While the Fourth Circuit has not directly addressed the factors to consider in determining whether a settlement reached in a FLSA case is fair and reasonable, various federal courts have analogized to the fairness factors generally considered for court approval of class action settlements under Federal Rule of Civil Procedure 23(e). *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 721-22 (E.D. La. 2008)(citing *Camp v. Progressive Corp.*, 2004 WL 2149079

18

at \*\*4-5 (E.D. La. Sept. 23, 2004) and *Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th

Cir. 1983)), *Stevens v. Safeway, Inc.*, 2008 U.S. Dist. LEXIS 17119 at \*\*13-14 (C.D. Cal. Feb.

25, 2008), *Brask v. Heartland Automotive Servs., Inc.*, 2006 WL 2524212 at \*2 fn.1 (D. Minn.

Aug. 15, 2006). The Fourth Circuit has noted that these factors are consistent with those used

by other federal courts in assessing fairness, and the same factors have been applied to a

settlement agreement under Title VII of the Civil Rights Act of 1964. *In re Jiffy Lube Securities

Litig.*, 927 F.2d 155, 158 n.1 (4th Cir. 1991).

### Extent of Discovery Conducted

An Initial Scheduling Order was entered in this case on December 18, 2008 which

provided that "Discovery may begin as of receipt of this Order." (Docket no. 131). Discovery

was set to close in this matter on April 10, 2009 and the Court was informed that a settlement

had been negotiated with less than one month remaining in the discovery period. In denying

Plaintiffs' motion for a protective order, this Court allowed the Defendants to proceed with

discovery of the individual Plaintiffs. Prior to the resolution of this action, written discovery

had been propounded by the Parties and responded to by the Parties and depositions had been

taken concerning the allegations set forth in the Complaint and the Defendants' defenses. Under

these circumstances, it is clear that the Parties had adequate time to conduct sufficient discovery

to "fairly evaluate the liability and financial aspects of [the] case." *Robins*, 88 B.R. at 760.

### Stage of the Proceedings

As mentioned above, discovery was to be completed in this case by April 10, 2009, and

the final pretrial conference was scheduled for Thursday, April 16, 2009, at which time a trial

date would have been set. In a companion case to this one, *Houston v. URS Corp.*, 1:08-cv-

0203 (AJT/JFA), Defendants' Motion for Partial Summary Judgment was set for hearing on

March 20, 2009, and in a Status Report dated March 4, 2009 Defendants in this action indicated

that if that motion was successful, they planned to file a similar motion in this case. (Docket no.

159). Counsel informed the Court that the matter was settled only nine days before that

argument. At the time the settlement was negotiated, it had become evident that the issues

relating to establishing the amount of damages each Plaintiff may be entitled to obtain under the

FLSA, assuming the Defendants' substantial defenses were rejected, would be complex and

costly. It was also clear that the Defendants intended to defend this action vigorously as shown

by the stated intent to file dispositive motions and their discovery efforts, including scheduling

the deposition of each Plaintiff. These proceedings advanced to a stage sufficient to permit the

Parties and their counsel to obtain and review evidence, to evaluate their claims and defenses

and to engage in informed arms-length settlement negotiations with the understanding that it

would be a difficult and costly undertaking to proceed to the trial of this case.

### Absence of Fraud or Collusion in the Settlement

There is a presumption that no fraud or collusion occurred between counsel, in the

absence of any evidence to the contrary. *Camp*, 2004 WL 2149079 at **7-8. In this case, there

is no evidence that the Settlement Agreement is the product of fraud or collusion. The

Settlement Agreement was procured by arms-length negotiations between the Parties and their

counsel. (SA ¶ 8.5)[9]. The Parties assert that they entered into the Settlement Agreement only

after consulting their counsel as to the meaning and effect of each term of the Settlement

_____

[9] Citations to the Settlement Agreement are shown as "SA ¶ _". The Settlement
Agreement may be found at Docket no. 162, Ex. 1.

Agreement. (SA ¶ 8.16). The Parties further agree that the Settlement Agreement was in no way the product of undue influence, duress, overreaching, collusion or intimidation. (SA ¶ 8.16). As shown by the manner in which counsel for the Plaintiffs and counsel for the Defendants zealously represented their clients in matters concerning defining the potential class members, in negotiating the language in the notice to be provided to potential class members, in raising issues concerning the scope of discovery and the arguments presented concerning liability and potential defenses, the undersigned is convinced that the Parties were zealously represented by their counsel and the Settlement Agreement was the product of arms-length negotiation in an adversarial process without fraud or collusion.

### Experience of Counsel Who Have Represented the Plaintiffs

Counsel representing the Plaintiffs, as well as counsel representing the Defendants, are competent and well-experienced in handling federal court litigation in general and in particular in handling class action and multiple party claims. Plaintiffs' lead counsel from Los Angeles, California has an established, national practice in representing multiple plaintiffs in claims against corporations, including labor issues such as those presented in this case. The pleadings, briefs and arguments presented by counsel for the Parties throughout this case have exhibited a high level of experience and competence. The Plaintiffs and the Defendants were each represented by experienced counsel who exhibited a knowledge of the applicable law, the procedures to be followed in this Court and they had the factual basis underlying the claims and defenses in order to evaluate the case and provide competent legal advice to each of their respective clients.

## Opinion of Class Counsel and Class Members

While counsel's opinion and recommendation as to the fairness and reasonableness of a settlement "is not to be blindly followed by the trial court," it is to be afforded some weight. *Flinn*, 528 F.2d at 1173. Counsel in this case have advised their clients regarding the Settlement Agreement and they have recommended judicial approval thereof, which should be considered by the Court.

Even though the Settlement Agreement is not signed by each individual Plaintiff[10], each Plaintiff was provided with a copy of the Settlement Agreement and each Plaintiff was given an opportunity to file objections with the Court. (Docket no. 182, SA ¶ 6.1). At the time of the initial hearing on the Parties' joint motion to approve the Settlement Agreement, Mr. Evans and Mr. Lomascolo had filed written objections. (Docket nos. 164, 165). As discussed above, Mr. Evans was provided with the relief he sought at that time, thereby making his objection moot. (See footnote 3). Mr. Lomascolo objected on the grounds that his rights as an employee would be terminated, contrary to previous determinations by the Internal Revenue Service ("IRS") and the state of Pennsylvania; the Settlement Agreement would have various ramifications with respect to a wrongful termination claim, and future employment in the field; the Settlement Agreement contained a non-admission of liability clause on the Defendants' part; and overtime wage standards would be reset. Given Mr. Lomascolo's position as the named Plaintiff and the designated agent for the other Plaintiffs, the objections he raises are of particular significance.

---

[10] As set forth in ¶ 6.1 of the Settlement Agreement, the Notice of Pendency of Lawsuit and Notice of Consent to Become an Additional Party Plaintiff provides that Mr. Lomascolo has full authority to make all necessary decisions on each Plaintiffs' behalf including settlement of the Lawsuit.

Between the initial hearing and the hearing on June 19, 2009 six more Plaintiffs filed objections with the Court. Mr. Lomascolo again expressed his concerns with the settlement, as did Bobby Hitchcock, Ethan Marlatt, Kurt Armbrust, Robert Evans, Ben Ryan, Richard Coe and Everett Sharp. (Docket nos. 183, 186, 177, 185, 184, 189, 190, 192, 193). Mr. Lomascolo acknowledges that arms-length negotiations took place, and that he had been advised that the Settlement Agreement was the "best settlement necessary to further pursue employee status". He claims that there was never any discussion about the actual language in the Settlement Agreement. He claims that the settlement is one-sided and favors Defendants, and the formula used to calculate overtime wages is flawed.

Mr. Hitchcock claims to be unhappy with the way in which Plaintiffs' counsel has handled the case, and disagrees with the settlement, including the formula used to calculate overtime, and disagrees with the amount of attorneys' fees. He asserts that his main concern is being granted employee status. Mr. Marlatt claims that he has concerns with respect to: the employee vs. independent contractor classification; retaliation by Defendants; establishment of the class; the formula used for assigning value to the work performed; and the handling of the Lawsuit by Plaintiffs' counsel. Mr. Armbrust expresses concerns with respect to: the significant decrease in his earning from Defendants; potential retaliation by Defendants; and Mr. Lomascolo's appointment as class representative. Mr. Armbrust urges to Court to allow the Lawsuit to proceed on the merits. Mr. Evans and Mr. Coe expressed their concern that a determination be made with respect to employment status. Mr. Ryan also seeks clarification of Plaintiffs' employment classification. Mr. Sharp expresses his desire to have the employment

status determined, his fear of retaliation by the Defendants and the inadequacy of the formula used to calculate entitlement to overtime wages.

It appears that the vast majority of Plaintiffs are in favor of the Settlement Agreement. It also appears that the objections raised are focused primarily on a desire to obtain a determination that they are "employees" under the FLSA for reasons other than the payment of overtime wages, and are not necessarily objections to the terms in the proposed Settlement Agreement itself. It is appropriate for the Court to consider the opinions of the class members: "The attitude of the members of the class, as expressed directly or by failure to object, after notice, to the settlement, is a proper consideration for the trial court, though a settlement is not unfair or unreasonable simply because a large number of class members oppose it." *Flinn*, 528 F.2d at 1173. Even though Mr. Lomascolo, the named Plaintiff and designated agent for the other Plaintiffs, has expressed concerns about the language in the Settlement Agreement, the Court must take into consideration the best interest of the entire class of Plaintiffs and make a determination as to whether the Settlement Agreement is fair and reasonable.

The objecting Plaintiffs state a strong desire to have the issue of whether they should be classified as employees under the FLSA determined by the Court. Neither the Settlement Agreement nor the Amended Stipulation and Order for Dismissal make a determination with regard to such status. The Amended Stipulation and Order for Dismissal now includes a provision explicitly stating that while the Stipulation and Settlement Agreement provide for the release of Plaintiffs' FLSA and similar wage and hour claims, they do not release or otherwise determine Plaintiffs' rights relating to employee or independent contractor status. (Am. Stip. ¶ 16). Several of the objecting Plaintiffs claim that the IRS has determined that they were

24

employees for tax purposes, and various state unemployment agencies have made similar

determinations for unemployment benefits decisions.  However, these determinations have no

effect on the Settlement Agreement in this case and the Settlement Agreement has no effect on

those determinations.  Defendants expressly deny any liability and reassert their claim that the

Plaintiffs were and are independent contractors, (SA Recitals  ¶ 6), but it is not necessary for the

Court to address this issue for the purposes of approving this Settlement Agreement.  Plaintiffs'

rights with respect to "issues relating to employee or independent contractor status" are

expressly not released or otherwise determined.  (Am. Stip. ¶ 16).  Furthermore, the

administrative determinations referenced by several of the objections are not entitled to

preclusive effect for FLSA purposes, *Davis v. Hartland Homes, Inc.*, 2006 U.S. Dist. LEXIS

70599 (D. Neb. Sept. 28, 2006), *Morrison v. International Programs Consortium, Inc.*, 253 F.3d

5 (D.C. Cir. 2001), and by the explicit terms in the Amended Stipulation and Order for

Dismissal, this settlement has no effect on any of those earlier administrative rulings or the

possible outcome of future claims.

  Another concern raised in the objections is the threat of retaliation for Plaintiffs'

participation in this Lawsuit.  The Parties specifically addressed the retaliation issue in the

Amended Stipulation and Order for Dismissal with Prejudice, which provides that while all

FLSA claims are being released, Plaintiffs' rights to assert claims against Defendants for, among

other things, retaliation, are not affected.  (Am. Stip. ¶ 16).  A related concern is that individuals

declined to join the Lawsuit for fear of retaliation, or were not given sufficient time to return

their consent forms.  Counsel represented that the Notice was sent to potential Plaintiffs in mid-

January 2009 (Docket no. 156), which allowed over a month for potential Plaintiffs to return

their consent forms. The Court established this schedule and determined that it would provide potential Plaintiffs with sufficient time to make a decision concerning participating in the Lawsuit. Similarly, Plaintiffs' counsel has represented that the proposed Settlement Agreement was sent to each Plaintiff (Docket nos. 176, 182) in sufficient time for the filing of any objection.

Several of the objecting Plaintiffs take issue with the formula used to calculate whether a Plaintiff is entitled to receive overtime compensation. The formula negotiated by the Parties is based upon an estimate of the time it would take an inspector to perform a single inspection and that number is then multiplied by the number of inspections performed by the inspector during a single week to determine whether the inspector worked more that 40 hours during that week. Despite the existence of Task Orders indicating that one hour is sufficient time to conduct an inspection and related tasks, the Parties agreed that 1.4 hours per inspection would be used, to account for actual inspection time, travel time, paperwork, scheduling, and so on. (SA ¶ 1.5). Based on that formula, any inspector who worked over 40 hours per week was eligible for overtime compensation. Under all the circumstances involved in this case, including the difficulty the Plaintiffs would face in providing evidence to support the actual number of hours spent performing work on Defendants' behalf during the relevant time period, the formula negotiated by the Parties is a reasonable method of calculating the overtime compensation to which Plaintiffs are to be paid pursuant to the Settlement Agreement.

As discussed above, the Parties have retained experienced and competent counsel who are well-versed in handling complex labor disputes on behalf of multiple parties. The objections to the Settlement Agreement are not supported by any evidence that counsel for the

Parties have acted improperly in their interactions with their clients. Each potential Plaintiff was provided with a Notice to opt-in as a Plaintiff in this matter, and counsel for Plaintiffs have complied with this Court's May 8, 2009 Order directing them to provide each Plaintiff with a copy of that Order and the Settlement Agreement. (Docket no. 182). Furthermore, as set forth below and as required by 28 U.S.C. § 636(b)(1)(C), each Plaintiff will have a ten (10) day period to file any objections he or she may have to these Findings and Recommendations. This additional time period will provide each individual Plaintiff with ample opportunity to review and, if warranted, object to the Court's Recommendation that the Settlement Agreement be approved.[11]

### Amount of the Settlement in Relation to the Potential Recovery

The Settlement Agreement requires the Defendants to pay a total of $260,000.00 to resolve all the claims raised by the Plaintiffs in this Lawsuit. (SA ¶ 2.1). This amount includes payments to the Plaintiffs, attorneys' fees and litigation-related costs. The Parties state that they wish to avoid the burden, expense, and uncertainty of continuing the litigation, and they want to resolve all claims that were, or could have been, asserted in the Lawsuit. (SA ¶¶ 1.7, 2.1). The Plaintiffs further state that based upon their counsel's analysis and evaluation of the merits of their claims, they recognize and acknowledge that continued litigation of this matter might not result in any recovery whatsoever, or a recovery that is less favorable, and that may not occur for several years. Plaintiffs therefore desire to enter into the Settlement Agreement in order to avoid these risks. (SA Recitals ¶ 7).

---

[11] Since this Settlement Agreement involves a collective action and not a class action under Fed. R. Civ. P. 23(e), there is no concern about the impact this settlement may have on absent persons.

27

Exhibit C to the Settlement Agreement provides an itemization of how the settlement payment is to be disbursed.[12] The Settlement Agreement describes in detail the formula the Parties negotiated to determine the value of overtime worked by Plaintiffs, and how they arrived upon each amount listed in Exhibit C. (SA ¶ 1.5). Since there was some uncertainty with respect to the precise hours worked and thus, amounts due, counsel agreed to use an estimate of the amount of time it would take to perform a typical inspection and use that estimate in calculating whether a Plaintiff had a potential claim for overtime compensation. Information concerning how many inspections were conducted by each Plaintiff during a week was obtained and used to determine whether that Plaintiff had a potential FLSA claim for overtime wages for that week based on the estimate of the time need to perform a single inspection. Based on that analysis, a formula was used to calculate the amount that each Plaintiff might obtain if the Defendants were unsuccessful in presenting their various substantial legal defenses to Plaintiffs' claims. As a part of this negotiated resolution, Defendants agreed to pay the Plaintiffs overtime compensation for a period of three years, instead of a potential limitation of two years.

Further, with less than 100 of more than 2000 potential Plaintiffs joining in this action, the potential recovery for those Plaintiffs had the litigation proceeded could have been exceeded by the cost of completing discovery and preparing for trial. Plaintiffs' counsel wisely recognized that the pursuit of a case in which they would likely be seeking more compensation

---

[12] The Parties initially requested that the terms of the Settlement Agreement be confidential and that the Plaintiffs not be provided with the payout schedule contained in Exhibit C to the Settlement Agreement. During the hearing on May 8, 2009, the undersigned expressed concern over this request and ordered that the entire Settlement Agreement, including the payout schedule, be provided to the Plaintiffs. The entire Settlement Agreement has been filed publicly with the Court (Docket nos. 162, Ex. 1; 182, Ex. 1) along with the payout schedule (Docket no. 181) and therefore neither may be considered confidential.

for fees and expenses than their clients would receive if they were successful in this action would be problematic. In light of the complexity of the case, the significant defenses raised by the Defendants and the costs that all Parties would have incurred had the case proceeded to trial, the total monetary amount of the settlement is fair and reasonable and the apportionment of that amount contained in Exhibit C is appropriate, including the payment of attorneys' fees.

Upon consideration of the relevant factors discussed above, the undersigned magistrate judge recommends a finding that the Settlement Agreement in this case is fair and reasonable.

### Bona Fide Dispute

In addition to being fair and reasonable, in order to merit Court approval, the settlement must resolve a bona fide dispute over FLSA provisions. *Lynn's Food Stores*, 679 F.2d at 1355. A bona fide dispute exists when an employee makes a claim that he or she is entitled to overtime payment. To settle such a dispute, there must be a resolution of the number of hours worked or the amount due. *Hohnke v. United States*, 69 Fed. Cl. 170 (Ct. Fed. Cl. 2005) (discussing cases). In this Lawsuit, the Plaintiffs allege that the Defendants mis-classified them as independent contractors when they were, in fact, employees, and thus they are entitled to be compensated for overtime hours worked under the FLSA. (Compl. ¶ 1). Clearly, the Complaint alleges a dispute over the amount due; Plaintiffs claim overtime compensation for each hour of overtime worked (Compl. ¶ 3) and Defendants deny those factual averments. (Defendants' Answer, Docket no. 62).

Further, in the Settlement Agreement Defendants specifically deny the allegations in the Lawsuit, including all claims of liability and damages with respect to the alleged facts or causes of action asserted. (SA Recitals ¶ 6, SA ¶ 6.4). The Plaintiffs and the Defendants claim that

29

their desire to enter into this Settlement Agreement flows from their desire to avoid the uncertainty, inconvenience and cost of litigation (SA Recitals ¶ 7, SA ¶ 6.4), and that neither the Settlement Agreement, nor the negotiations that preceded it, represent any admission by Defendants of any violation of law, or any liability to Plaintiffs.  (SA ¶ 6.4).  It is also clear that nothing in the Settlement Agreement or the Amended Stipulation and Order for Dismissal with Prejudice represent any admission by the Plaintiffs that they are in fact independent contractors and not employees.

For these reasons, the undersigned magistrate judge recommends a finding that the Settlement Agreement constitutes a resolution of a bona fide dispute over FLSA provisions.

## Conclusion

It is the recommendation of the undersigned magistrate judge that the Court find this Settlement Agreement to be a fair and reasonable resolution of a bona fide dispute over FLSA provisions as required by *Lynn's Food Stores*, 679 F.2d 1350, and that the Court grant the Parties' Joint Motion to Approve the Settlement Agreement, and Enter the Amended Stipulation and Order for Dismissal with Prejudice.

## NOTICE

**By means of the Court's electronic filing system, the Parties are notified that objections to this Proposed Findings of Fact and Recommendations must be filed within ten (10) days of service of this Proposed Findings of Fact and Recommendations and a failure to file timely objections waives appellate review of the substance of the Proposed Findings of Fact and Recommendations and waives appellate review of any judgment or decision based on this Proposed Findings of Fact and Recommendations.  Counsel for the**

Plaintiffs is directed to provide a copy of this Proposed Findings of Fact and

Recommendations to each individual Plaintiff, and file a notice through the Court's

CM/ECF system certifying that he has done so.

ENTERED this **23** day of June, 2009.

/s/

John F. Anderson
United States Magistrate Judge

John F. Anderson
United States Magistrate Judge

Alexandria, Virginia

31